UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 7216 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| C.R. BARD, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Medline Industries, Inc. ("Medline") alleges that Defendant C.R. Bard, Inc., ("Bard") has infringed on Medline's patents for a single-layer Foley urinary catheter tray. Bard, who has already answered the complaint in this case, now moves to transfer venue to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Although the Court finds that the public and private factors slightly favor litigating this case in the Northern District of Georgia, Bard has failed to show that transfer is clearly warranted. The Court, therefore, denies the motion to transfer.

**BACKGROUND**[1]

Bard is a Delaware corporation headquartered in New Jersey. Bard Medical Division ("BMD") is a division of Bard located in Covington, Georgia. Medline is an Illinois corporation headquartered in the Northern District of Illinois. Both Medline and Bard market and sell a urinary catheter system to hospitals throughout the United States. Both companies' catheter systems use a single tray design. Medline developed this type of system first and patented the

---

[1] In addressing Bard's motion to transfer, the Court is not obligated to limit its consideration to the pleadings. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). The Court resolves all factual conflicts and draws all reasonable inferences in Medline's favor. *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011).

design. Bard subsequently developed and sold their single tray system. Medline has now filed three suits in the Northern District of Illinois alleging patent infringement against Bard. This suit is the third in that series and the only one Bard seeks to transfer to a different venue.

**ANALYSIS**

Section 1404(a) states that the Court may transfer venue to another district "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). For transfer to be appropriate, Bard must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave*, LLC, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). Bard bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). The transfer decision is committed to the Court's sound discretion because the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey*, 796 F.2d at 219.

1. **Proper Venue**

The Court addresses first where venue is proper. Bard has answered the complaint here already, waiving any right to challenge venue. It did so although Medline filed this case after the Supreme Court issued its ruling in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, --- U.S. ----, 137 S. Ct. 1514, 1520, 197 L. Ed. 2d 816 (2017), which established more limited venue in patent cases than the Federal Circuit had previously allowed. It is possible that venue would not be proper in the Northern District of Illinois had Bard raised the issue, but Bard still does not

2

contest venue here so the Court finds that Bard has waived this issue and venue is therefore proper.

Next, venue is also proper in the Northern District of Georgia, where Bard seeks to have this case transferred. The division of Bard responsible for developing the allegedly infringing product is headquartered in that district, and many of the decisions regarding the production, distribution, and sale of the product occurred in the district. Also Medline does not dispute that venue would be proper in the Northern District of Georgia.

## 2. Convenience of the Parties and Witnesses

In evaluating the convenience of the parties and witnesses, the Court considers "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *Brandon Apparel Grp., Inc. v. Quitman Mfg. Col.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999).

First, courts typically give a plaintiff's choice of forum substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Id.* This deference is lessened "where the plaintiff's chosen forum is not the plaintiff's home forum or has relatively weak connections with the operative facts giving rise to the litigation." *Body Sci. LLC. v. Boston Sci. Corp.*, 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012). In this case, the chosen forum is plaintiff's home forum— Medline is an Illinois corporation with its headquarters in the Northern District of Illinois. Bard, on the other hand, has minimal connections with this District. Its primary connection with this District is that is sells the SureStep tray here and in the rest of the country. "Sales alone are insufficient to establish a substantial connection to the forum if the defendant's goods are sold in many states." *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874

(N.D. Ill. 1999). Bard also has a subsidiary in this District; however, that subsidiary has nothing to do with the catheter trays at issue.

Bard designed its catheter tray at the BMD facility in Covington, Georgia. Bard makes the marketing and distribution decisions about the tray there as well. Though Bard's national sales director lives in Nashville, Tennessee, Covington is the home base for the team primarily responsible for marketing the tray as well as the engineering team that developed the SureStep tray. And while the trays are manufactured in Mexico, they are sterilized at the Covington facility before being distributed to customers. Therefore, while the Northern District of Illinois is Medline's home district, it has no greater connection to the facts at issue than any other district. This means that the Court should afford Medline's choice of forum "some, but not substantial, deference." *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998) (giving some but not all deference to plaintiff's choice of forum because Illinois lacked a connection to the underlying case). Therefore, this factor weighs only slightly against transfer.

Second, the Court looks at the situs of material events. In patent cases, the alleged infringer's principal place of business is generally a focus of the Court's attention, because it is often where the activities and documents that led to development and marketing of the infringing product are located. *Body Sci.*, 846 F. Supp. 2d at 993; *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. P'ship*, 807 F. Supp. 470, 474 (N.D. Ill. 1992). This does not mean that patent defendants are entitled to an automatic transfer of venue to their home district; rather, it is one factor the Court considers in its analysis. *See Abbott Labs. v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *3 (N.D. Ill. Oct. 23, 2007). If infringing products are sold in the transferor district, this does not favor transfer. *Carson v. Flexible Foam Prods., Inc.*, No. 08-cv-095-bbc, 2008 WL 1901727, at *2 (W.D. Wis. Apr. 23, 2008). However, this is less important

when the product is sold nation-wide, and not specifically or primarily sold in the transferor district. *SRAM Corp. v. SunRace Roots Enter. Co.*, Ltd., 953 F. Supp. 257, 259 (N.D. Ill. 1997) (considering the fact that infringing goods were sold in the transferor district, but finding that the situs of event factor still favored transferring the case because the majority of sales were not in the district).

Bard is a Delaware corporation with its headquarters in New Jersey. The division of Bard that developed the SureStep tray is located in Covington, Georgia. The Covington facility is where the engineering team that developed the SureStep tray is located. Additionally, Bard marketing employees responsible for marketing the SureStep tray are located in Covington. Medline asserts that Bard conducted its initial research that led to the development of the SureStep tray at the University of Cincinnati, but Medline does not dispute that the actual development of the SureStep tray happened in Covington and the majority of the subsequent work relating to the tray occurred in Covington. Therefore, the situs of material events in this matter is Covington, Georgia. *See Anchor Wall*, 55 F. Supp. 2d at 874. This factor supports transfer.

Next, the Court considers the ease of access to proof. The parties concede that because this is the third related case between them, non-testimonial discovery will be limited. Furthermore, to the extent there is non-testimonial evidence, it is largely electronic and can be easily transferred anywhere in the country. Additionally, the devices in question are quite small and easily transported. Therefore, this factor does not support transfer.

Fourth, the Court looks at the convenience of potential witnesses. Courts often view this as the most important factor in the transfer analysis. *Brandon Apparel*, 42 F. Supp. 2d. at 834. Bard has identified seven current and two former employees who it anticipates will testify in this

case. Bard also identified Medline's patent counsel, Philip Burrus, who prosecuted the applications for the asserted patents as a potential witness. Burrus lives in the Atlanta area and is a non-party witness. Medline identifies four non-party witnesses whom it expects will testify. As the moving party, Bard "bears the burden of establishing who his witnesses are, what their testimony will be, and how vital that testimony will be to the case." *Rohde v. Cent. R.R. of Indiana*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) (citations omitted) (internal quotation marks omitted). The Court gives less weight to the convenience of Bard's seven party witnesses, because the Court presumes they will appear voluntarily at trial. *See AL & PO Corp. v. Amer. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb. 19, 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses.").

Looking first at the non-party witnesses, the Court finds that this factor slightly favors transfer. All three of the non-party witnesses Bard identifies reside in the Northern District of Georgia. Medline's non-party witnesses reside in Illinois, but two of them also reside outside of Illinois part of the time. Therefore, either district would require at least three non-party witnesses to travel. However, many of the parties' non-party witnesses appear to either be largely irrelevant or duplicative of other party witnesses. First, Bard states that non-party witness David Icenogle was one of three engineers whose work was "instrumental in the design, development, and engineering of the accused SureStep trays." Doc. 38-1 at 11. The other two engineers are still employees of Bard and listed as potential witnesses. It is not clear what testimony Icenogle would provide that would not be adequately addressed by the other two engineers. Therefore, the Court does not ascribe substantial weight to Icenogle's convenience.

6

Bard's second non-party witness is David Fish.  Fish was a product and marketing manager at Bard and oversaw an earlier catheter tray that Bard asserts is prior art, invalidating Medline's patents.  Again, Bard has identified a party witness, Greg Mann, who is an engineer and "has knowledge regarding Bard prior art, which is relevant to the invalidity of Medline's asserted patents."  Doc. 38-1 at 11.  The potential testimony of Mann and Fish would seem to be largely overlapping, diminishing the need to have Fish present at trial.  Therefore, the Court accords Fish's convenience little weight.

Finally, Bard lists Phillip Burrus, the attorney Medline used to prosecute the patents at issue.  Burrus lives in the Atlanta area.  While he is a non-party witness, he has stated to Medline that he is willing to appear at trial in Illinois if called.  The Court therefore gives little weight to Burrus' convenience, when he himself does not object to testifying in either venue.

Turning to Medline's non-party witnesses, the analysis is fairly similar.  Medline identifies three inventors of the patents in suit.  Because the focus of this case is Bard's alleged infringing actions, the testimony of the three inventors of the Medline tray is ancillary at best.  *See Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1580 (Fed. Cir. 1996) ("*Markman* requires us to give no deference to the testimony of the inventor about the meaning of the claims.").  Medline's other non-party witness, Trent Haywood, conducted a case study for Medline regarding its catheter tray and a Bard tray not at issue in this case.  This other Bard tray is not accused of infringing, and it is not clear what value Haywood's testimony would have in this case.  Therefore, the Court does not put significant weight on Haywood's convenience either.   Taken together, the testimony of the non-party witnesses only slightly favors transfer, if at all.

Turning to the party witnesses, it is not clear that any party witnesses from Medline would be truly necessary witnesses to this action. As noted above, the focus of this case is Bard's alleged infringing actions. *Body Sci. LLC*, 846 F. Supp. 2d at 994 ("To establish liability in a patent infringement case, plaintiffs generally need to 'discover primarily the design, development and engineering of the accused device.'" (quoting *Ambrose v. Steelcase, Inc.*, No. 02–2753, 2002 WL 1447871, at *3 (N.D. Ill. July 3, 2002)). Therefore, the testimony of Medline employees regarding Medline's patents and tray is less likely to be relevant. However, the testimony of at least some of the seven party witnesses Bard identified will be relevant at trial. Therefore, this element favors transfer.

Finally, in evaluating convenience to the parties, the Court considers the parties' residences and their ability to bear the cost of litigating in each forum. *Brandon Apparel*, 42 F. Supp. 2d. at 834. Here, both parties are corporations, and will not be significantly burdened by having to litigate in either district. Therefore, this factor does not favor transfer.

Viewing the above analysis as a whole, the Court finds that it may be slightly more convenient to try this case in the Northern District of Georgia, but not substantially so.

### 3. Interest of Justice

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Courts consider factors such as likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, the relationship of each community to the controversy, and the possibility of consolidating related litigation. *Id.*; *Coffey*, 796 F.2d at 220–21. This analysis does not relate to the merits of an underlying dispute. *Coffey*, 796 F.2d at 221.

First, both this Court and the Northern District of Georgia are equally capable of resolving patent cases based on federal law. *See Body Sci.*, 846 F. Supp. 2d at 998 (finding that the transferring court and any transferee court were equally equipped to handle patent infringement case). Therefore, this factor does not favor transfer.

Next, the average time between filing and disposition in the Northern District of Georgia is 6.2 months versus 8.5 months in this District.[2] Bard also notes that the time from filing to claim construction, summary judgment, and trial in the Northern District of Georgia is shorter than in this District. Medline counters that because the case has already been pending here for several months, the time to disposition in this District would be shorter in this case. This is incorrect, however, because the Northern District of Georgia should simply pick up where this Court left off. The case does not start from scratch. Medline also argues that because there are already two related cases pending in this District, it is beneficial to continue to hear this case in this District. It is true that courts should consider the feasibility of consolidation in their transfer analysis. *Coffey*, 796 F.2d at 221. However, there is no indication that either party intends to pursue consolidation here or that consolidation would even be appropriate. The other two cases are at significantly later stages than this litigation and address different patents. While the patents in the other cases share some of the same terms as the patents at issue in this case, neither this Court nor a court in the Northern District of Georgia would be bound by any rulings or constructions made in those related cases, and both courts are equally free to consider those rulings when making their own determinations. Viewed together, the Court finds that this case may be resolved at most a few weeks faster in the Northern District of Georgia than in this District, a modest benefit at best. This efficiency gain is further undermined by the inefficiency

---

[2] These figures come from the website of the United States Courts detailing federal court management statistics as of December 31, 2017. *See http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_d istprofile1231.2017.pdf.*

of requiring a new court to familiarize itself with the facts and parties, as well as the potential need for the parties to obtain local counsel and familiarize themselves with the procedures of the Northern District of Georgia. Both parties are already well aware of the procedures of litigating a patent case in this District and the potential benefits of placing this case on a slightly less congested docket does not merit these other disruptions and inefficiencies. Therefore, this factor does not favor transfer.

Next, both districts have an interest in redressing the alleged infringement. *See Body Sci.*, 846 F. Supp. 2d at 998 (holding that several states share an interest in redressing infringement where a product is distributed and sold throughout the country). However, the district where the alleged infringing products were researched, developed, and tested, in addition to being marketed and sold, has a greater interest than other districts where the products were simply sold. *Id.* As noted above, the majority of Bard's research, development, and marketing decisions about the SureStep tray occurred in the Northern District of Georgia. Thus, while the Northern District of Illinois has an interest in preventing the sale of infringing goods, the Northern District of Georgia's interest is greater.

This is a close case. Both the private convenience interests and the public interests slightly favor transfer. However, the purpose of § 1404(a) transfer is not to make incremental improvement: it is reserved for when the transferee venue is "clearly more convenient." *Heller Fin. Inc.*, 883 F.2d at 1293; *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664–65 (7th Cir. 2003) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum is rarely disturbed." (citations omitted) (internal quotation marks omitted)). That is not the case here. Taken together, the above factors, at most, slightly favor transfer, but it is not clearly more

convenient to proceed in the Northern District of Georgia.  Therefore, Bard has failed to carry its burden, and the Court denies the motion to transfer.

## CONCLUSION

For the foregoing reasons, the Court denies Bard's motion to transfer [38].

Dated: April 4, 2018

_____
SARA L. ELLIS
United States District Judge