**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-7216 |
| | ) | |
| vs. | ) | Hon. Sara L. Ellis |
| | ) | Hon. Magistrate Judge Michael T. |
| C. R. BARD, INC. | ) | Mason |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF C. R. BARD'S
MOTION TO STAY PENDING PTO DECISIONS RE *INTER PARTES* REVIEWS**

## I.    INTRODUCTION

Defendant Bard filed petitions with the PTO between October 4, 2018 and November 7, 2018 seeking *inter partes* review ("IPR") of all 115 asserted claims of the four patents at issue in this case.  Bard requests that this Court stay this matter after the *Markman* Hearing on December 17 and 18, 2018 at least until the PTO decides whether to institute the IPRs, which it must do no later than May 2019.[1]

A stay is appropriate under the applicable factors.  First, a stay would almost certainly simplify the issues in this case and streamline any trial.  The PTO grants review if Bard has a "reasonable likelihood" of prevailing on the merits of at least 1 challenged claim.  *See* 35 U.S.C. § 314(a)-(b); *see also SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (holding that "the Board *must* address *every* claim the petitioner has challenged.").  Even if some claims ultimately survive, any reduction in the 115 asserted claims would greatly simplify the issues.  And Bard would be estopped from raising art at trial that it could have raised in the IPRs.

Second, a stay would greatly reduce the burden of litigation on this Court and the parties. For example, the IPRs will likely narrow or focus claim construction issues, as occurred in the *Medline I* case when Judge Lee stayed the case pending institution of IPRs.  Specifically, Medline shifted from its litigation claim construction positions and adopted a narrower reading of the claims in the IPRs to avoid invalidation of a patent.  As a result, Medline had to drop half of the accused products from the case.

---

[1] Bard notified Medline and the Court regarding the imminent filing of its petitions for IPRs at the September 12, 2018 status conference.  The Court stated that it would not "stay anything until after we've done the Markman hearing because I want to get that done."  (Declaration of Nicole Smith ("Smith Decl.") Ex. A at 6:2-3.)  Medline's counsel responded that "we would oppose any stay, but understanding that under the local rules everything comes to a halt in any event while you issue your Markman ruling." (*Id.* at 6:13-15.)  The parties are working out a briefing schedule on this motion to obviate the need for a presentment hearing.  (Smith Decl. ¶ 11.)

Moreover, statements that Medline makes to the PTO in the context of the IPRs become file history that affect claim construction, just as the statements it made to the PTO when prosecuting the patents are relevant to claim construction. Indeed, Medline's recently-filed claim construction brief in this case highlights the necessity of a stay here, as Medline is now deviating from statements it made to the PTO to secure issuance of its patents, and instead proposing incredibly broad constructions that would clearly invalidate its patents.[2]

Third, a stay would not unduly prejudice or tactically disadvantage Medline. A stay pending institution would be quite short here because the PTO is statutorily required to make a decision on institution within six months of filing. Thus, the PTO must decide Bard's first two IPR petitions in less than five months from today.

The Court may extend the stay upon institution as this would not prejudice Medline. The duration of such a stay would be limited because the PTO must make a final determination on all challenged claims within one year. 35 U.S.C. § 316(a)(11). Medline would also have the option of cancelling instituted claims and patents to reduce the duration of the stay, as it did in *Medline I*. Finally, Medline benefits equally from a stay awaiting a final decision by the PTO because Bard is estopped at trial from raising prior art that it could have raised in the IPR to the extent any instituted claims ultimately survive.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A. Medline Asserts 115 Claims of Four Patents

Medline has accused Bard of infringing four patents in this case:

- U.S. Patent 9,745,088 ("'088 patent") issued August 29, 2017;

---

[2] Medline's preliminary responses to Bard's first IPR petitions, should it choose to file any, are due January 11, 2019.

- U.S. Patent 9,795,761 ("'761 patent") issued October 24, 2017;

- U.S. Patent 9,808,400 ("'400 patent") issued November 7, 2017; and

- U.S. Patent 9,808,596 ("'596 patent") issued November 7, 2017.

(ECF No. 23, Second Amended Complaint ¶¶ 36-44.)  It accuses Bard's SureStep™ Foley Tray System, which was first sold in March 2014.

Medline sued Bard for infringement of the '088 patent on October 5, 2017; it filed a First Amended Complaint on October 24, 2017, adding the '761 patent, and filed a Second Amended Complaint on November 7, 2017, adding the '400 and '596 patents.  Medline has asserted 115 claims of those four patents in this case:

- **76 claims** of the '088 patent (claims 1, 2, 6-10, 16-19, 25-58, 60-74, 76-90, and 92

- **23 claims** of the '761 patent (claims 1-19 and 22-25 )

- **4 claims** of the '400 patent (claims 13, 14, 16 and 17); and

- **12 claims** of the '596 patent (claims 7-16, 21 and 22).

(Smith Decl. Ex. B at 1.)

The patents here have very basic claims directed to a *tray* for holding medical devices with multiple compartments:



(ECF Nos. 119-1 to 119-4, Fig. 1.) The medical devices described in the patents (e.g., a Foley catheter and syringes) were known for many decades before Medline filed its patents in 2009. For example, as described in Bard's IPR petitions, Bard itself has a patent from 1963 on a single level Foley catheter tray including a Foley catheter and inflation syringe:



(*See* U.S. Patent No. 3,166,189, Fig. 1 (Smith Decl. Ex. C).)

The various claims of the asserted patents mix and match descriptions of the structure of the tray and the placement of various components in the tray. For example, claim 45 of the '088 patent recites:

> **45.** A medical procedure kit, comprising:
>
> a single layer tray having a first compartment for receiving syringes and a second compartment for receiving a medical assembly;
>
> a first syringe and a second syringe disposed within the first compartment;
>
> the medical assembly disposed in the second compartment, wherein the medical assembly comprises a coiled tubing coupled between a fluid drain bag and a Foley catheter;
>
> at least one layer of wrap material enclosing the single layer tray within one or more folds of the at least one layer of wrap material; and
>
> an outer packaging disposed about both the single layer tray and the at least one layer of wrap material.

Similarly, claim 7 of the '596 patent recites a single layer tray with multiple compartments containing a catheter and syringes at different heights within the tray:

> **7.** A catheterization kit comprising:
>
> a single level container defining a first compartment bounded by a first compartment base member and at least a first portion of a perimeter wall, the single level container defining a second compartment bounded, at least in part, by a second compartment base member and at least a second portion of the perimeter wall;
>
> a first syringe disposed within the first compartment of the single level container, the first syringe containing an inflation fluid;
>
> a second syringe disposed within the first compartment of the single level container, the second syringe containing a lubricating jelly; and

a coiled medical device disposed within the second compartment
of the single level container, the coiled medical device including a
Foley catheter, a fluid receptacle, and a tube coupling the Foley
catheter to the fluid receptacle, the Foley catheter and the fluid
receptacle positioned within the second compartment such that the
fluid receptacle is between the second compartment base member
and the Foley catheter.

The purported novelty of Medline's patents is little more than the *arrangement* of *known* medical devices in a *known* tray structure. For example, the Patent Examiner allowed certain claims merely because the syringes were provided at different heights within the tray. (Ex. D at 17.) But the Examiner overlooked several critical prior art references in the process. (*Id.* at 1-2.) As described below, the IPR process allows a panel of three administrative law judges to review the patentability of Medline's claims in a short timeframe.

## B.    *Inter Partes* Review Procedure

The *inter partes* review procedure was established to create "a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." 77 Fed. Reg. 48,680 (Aug. 14, 2012). The PTO must decide whether to institute an IPR within six months after the petition is filed.[3] 35 U.S.C. § 314(b). Assuming Medline files preliminary responses, all of the PTO's decisions here will issue no later than May 2019.

The PTO will institute the proceeding if Bard shows a reasonable likelihood of prevailing on at least one challenged claim. 35 U.S.C. § 314(a). Proceedings are conducted before a panel of three technically-trained Administrative Patent Judges. 35 U.S.C. §§ 6(a)–(c), 311. The parties are permitted to take limited discovery and respond to each other's arguments; they also

---

[3] Medline has 3 months from the filing date assigned to the petitions in which to file any preliminary responses; these preliminary responses are optional. 37 C.F.R. § 42.120. Thereafter, the PTO has three months in which to issue decisions instituting the *inter partes* reviews. 35 U.S.C. § 314(b)(1).

have the right to an oral hearing. 35 U.S.C. § 316(a). Upon institution of any of Bard's petitions, the PTO has one year to make a final determination on all challenged claims.[4]

### C.       Bard Timely Petitioned for *Inter Partes* Review of the Patents

Bard filed five petitions for IPR.[5] Each petition was filed within one year of service of the relevant complaint. (*See* Smith Decl. ¶¶ 5-9 & Exs. D-H.) The two petitions on the '088 patent were filed on October 4, 2018, the '761 petition was filed on October 24, 2018, and the '400 and '596 petitions were filed on November 7, 2018. *Id.* They are lengthy and detailed, and they challenge every asserted claim of the four patents. (*Id.*)

### D.       Related Litigation

Medline has filed two previous cases against Bard involving six other similar patents directed to catheter trays.

#### 1.       *Medline I*

The first case was filed on May 16, 2014, with three asserted patents, and is pending before Judge Lee. (*Medline Industries, Inc. v. C.R. Bard, Inc.*, 14-cv-03618 (N.D. Ill.) ("*Medline I*").) Medline initially accused two sets of products of infringement in *Medline I*: the Surestep Foley Tray System and the Advance Foley Tray System.

Bard filed IPR petitions on all three patents asserted in *Medline I*. Judge Lee stayed the case for approximately six months (from February 2015 through August 2015) while the petitions were pending. (Smith Decl. Ex. I and *Medline I*, ECF No. 116.) The PTO instituted review on 11 claims across two of the patents.[6] Medline promptly took adverse judgments on

---

[4] In rare circumstances, the PTO may extend its decision time for up to six months only for "good cause."

[5] Bard filed two petitions on the '088 patent because it contains 76 asserted claims; the claims were split between the two petitions.

[6] The institution decisions on the *Medline I* patents occurred before the Supreme Court's decision in *SAS Institute v. Iancu*, which now requires that "when the Patent Office institutes an *inter partes* review, it

the 11 instituted claims, resulting in their cancellation, in order to terminate the proceedings and resume the litigation on those patents.

The PTO denied institution of Bard's petition on the third patent only because the PTO adopted a narrow claim construction that Medline had proposed to avoid prior art. As a result, Medline was forced to drop one of the two sets of accused products from the *Medline I* case. Specifically, Medline dropped the Advance Foley Tray System products from its infringement contentions. The SureStep Foley Tray System products are now the only products accused by Medline in each of the lawsuits it has brought.

Judge Lee held a *Markman* Hearing on January 11, 2017 and February 2, 2017. The parties await a *Markman* Order.

### 2.  *Medline II*

The second case was filed on March 23, 2016, with two asserted patents, and is pending before Judge Coleman. (*Medline Industries, Inc. v. C.R. Bard, Inc.*, 16-cv-03529 (N.D. Ill.) ("*Medline II*").) Medline added a third patent to the case on April 3, 2017, which led to a second round of claim construction briefing. Judge Coleman held a *Markman* Hearing on March 26 and 27, 2018. The parties await a *Markman* Order.

### 3.  Common Claim Terms Among the Cases

There are several common disputed claim terms in each case. The meaning of the term "catheter assembly" is disputed in all three cases. (ECF Nos. 120-2 and 120-3.) The terms "mnemonic device," "lubrication jelly application compartment," and "flange" are disputed in

---

must decide the patentability of all of the claims the petitioner has challenged." 138 S. Ct. at 1351. In other words, the PTO can no longer institute only a partial review on a subset of the challenged claims, as was permitted when the petitions on the *Medline I* patents were filed.

*Medline II* and here. (ECF No. 120-3.) The terms "barrier" and "reveal," for which Medline has proposed constructions in this case, were also raised in *Medline I*. (ECF No. 120-2.)

## II.     LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO" review. *See Ethicon, Inc. v., Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citation omitted). *Ethicon* addressed a reexamination, but the same authority applies to an IPR. *Ignite USA, LLC v. Pac. Mkt. Int'l, LLC*, 2014 WL 2505166, at *2 (N.D. Ill. May 29, 2014); *Black & Decker, Inc. v. Positec USA, Inc.*, 2013 WL 5718460, at *3 (N.D. Ill. Oct. 1, 2013).

The factors balanced in determining whether or not to grant a stay include whether a stay will simplify the issues in question and streamline the trial, whether a stay will reduce the burden of litigation on the parties and the Court, and whether the stay will unduly prejudice or tactically disadvantage the non-moving party. *Ignite*, 2014 WL 2505166, at * 2; *Black & Decker*, 2013 WL 5718460, at * 3.

## III.    ARGUMENT

A stay likely will greatly simplify this case, will likely reduce the burden of litigation, and will not unduly prejudice or tactically disadvantage Medline—certainly not enough to justify the unnecessary waste of judicial and party resources. Indeed, given the number of claims asserted, a stay may expedite this case, rather than delay it.

### A.      A Stay in Favor of the IPRs Will Likely Greatly Simplify this Case

The patents here, like the patents in *Medline I,* have very basic claims directed to catheterization components and tray structure known in the industry for decades. As a result of the petitions filed in *Medline I,* Medline cancelled 11 claims and dropped infringement allegations against one of the two sets of accused products, all in the span of 6 months. Thus, it

is very likely that the petitions filed here will similarly result in a more streamlined case that would ease the Court's burden and simplify the trial. *See Ignite*, 2014 WL 2505166, at * 4 ("If the USPTO cancels all or some of the asserted claims, then the issue of infringement for those claims would no longer exist.").

The Supreme Court's recent decision in *SAS* greatly increases the potential for issue simplification because the PTO must now institute review of *all* challenged claims. "As a result, if IPR is instituted, the PTO will either (1) invalidate the asserted claims and reduce the number of issues before this Court, or (2) find the claims valid, in which case [Bard] will be estopped from asserting those invalidity contentions here." *Wi-LAN, Inc. v. LG Elecs., Inc.*, 2018 WL 2392161, at *1 (S.D. Cal. May 22, 2018) (granting motion to stay and noting that "[c]ertainly, the PTO's review of the patents-in-suit will clarify and streamline the issues before this Court").

Even if only some of the 115 asserted claims are canceled, the Court and parties would still benefit from a narrowed case. *Black & Decker*, 2013 WL 5718460, at *2 ("The court evaluates whether [IPR] review would simplify the issues in question, not whether it could eliminate *every issue* in the case."). Moreover, Medline's distinctions to the PTO regarding the prior art cited in Bard's IPR petitions can impact claim construction, claim scope, and infringement here, just as occurred in *Medline I* when Medline was forced to drop a set of accused products from the case because of a claim construction it proposed during IPR to avoid prior art. Statements Medline makes to the PTO regarding the IPRs are relevant prosecution history for this Court's claim construction, and can even result in prosecution history estoppel. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) ("Because an IPR proceeding involves reexamination of an earlier administrative grant of a patent, it follows that

statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer.")[7]

Many courts have recognized the value of the IPR process in streamlining claim construction and invalidity disputes when granting motions to stay pending IPR. *Sec. People, Inc. v. Ojmar US, LLC*, 2015 WL 3453780, at *3 (N.D. Cal. May 29, 2015) ("Even if the PTAB does not invalidate any claims, the PTAB's claim construction and invalidity analyses 'would likely prove helpful to this Court.'"). *Tire Hanger Corp. v. My Car Guy Concierge Servs. Inc.*, 2015 WL 857888, at *2 (C.D. Cal. Feb. 27, 2015) ("[T]he IPR will at the very least simplify the issues and streamline the litigation by reducing claim construction disputes and minimizing the number of claims that the parties need to address."). And finally, the Court, parties, and public benefit from having a panel of three relatively knowledgeable subject matter experts review the claims in light of the prior art.

### B. A Stay Will Likely Reduce the Burdens of Litigation

The Court and the parties will benefit from a stay pending the PTO's Institution Decisions due in May 2019, including a stay of this Court's *Markman* ruling.[8] Such a stay will avoid the expenditure of a significant amount of work and money on expert reports relating to infringement, invalidity, and damages, as well as on discovery regarding willfulness and opinions of counsel, and dispositive motions. *See PersonalWeb Techs., LLC v. Facebook, Inc.*, 2014 WL 116340, at *4 (N.D. Cal. Jan. 13, 2014) (granting motion to stay pending IPR where

---

[7] *See also St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 412 Fed. App'x 270, 275-76 (Fed. Cir. 2011) ("Reexamination statements are relevant prosecution history when interpreting claims.")

[8] As discussed at the September 12, 2018 status hearing, the Court is proceeding with the *Markman* Hearing on December 17 and 18, 2018. Thereafter, as opposing counsel noted, "everything comes to a halt in any event" until the *Markman* ruling issues. (Smith Decl. Ex. A at 6:14.)

parties had not yet engaged in "significant and costly work of conducting expert discovery and preparing summary judgment motions" and no trial date had been set).

Because Medline asserts 115 claims, Bard's supporting expert declarations for its IPR petitions totaled over 800 pages. Absent a stay, any invalidity expert declarations in the litigation would be even longer because the IPR declarations did not address prior art that Bard could not raise in the IPR (e.g., system art). Nor did the expert declarations address invalidity under Section 112, as indefiniteness cannot be raised in an IPR.

A stay will also allow the parties and the Court to have the benefit of the PTO's decisions, as occurred in *Medline I* when claims and products were dropped following institution. If the PTO invalidates any of the 115 claims, that will necessarily shorten expert reports, as well as dispositive motions and trial. A stay would also increase judicial efficiency and consistency, providing the courts in *Medline I* and *II* further opportunity to render their *Markman* rulings and provide analysis on claim terms that overlap with this case.

A stay would also afford the Court the opportunity to take into account any additional file history Medline creates through its statements to the PTO before claim construction is decided, rather than having to revisit that construction later. Indeed, Medline's November 7, 2018 claim construction brief highlights the necessity of a stay pending IPR here. Medline previously argued during prosecution of a related patent that the claims were patentable over the prior art because of the "mnemonic device" term. Medline read the term in view of the specification as a tray bottom that supports syringes at different heights. (ECF No. 120 at 15.) The Patent Examiner agreed with Medline when issuing the claims. He stated in the Notice of Allowance:

> In the context of the claimed catheter tray, the cues are provided by **chambers of different heights and locations**, and the pairings are provided as **a specific order of using syringes.**

(*Id.*) Medline then added that claim term to *three* more patent applications. These applications issued as patents that Medline asserts in this case: the '088 Patent, '761 Patent, and '596 Patent.

But Medline now runs away from the construction that the Patent Office adopted to find its claims patentable over the prior art. Medline argues that syringes do not need to be supported at "different heights and locations" so as to secure a broad construction that would allegedly read on the accused products. (ECF No. 123 at 9-12.) A stay would preserve the public notice function of claims and promote judicial efficiency and consistency by allowing a reconciliation between the narrow constructions the Patent Office adopted in issuing the claims and the broad constructions Medline asserts in this Court in alleging infringement.[9] *See, e.g.*, *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1254 (Fed. Cir. 2008) (rejecting "a construction [that] would undermine the notice function of the claims because it would allow [patentee] to benefit from the ambiguity, rather than requiring [patentee] to give proper notice of the scope of the claims to competitors.").

A stay pending IPR will likely resolve these issues. Medline has previously shown that it will abandon broad constructions in the litigation in favor of narrower ones to save its patents from being invalidated by an IPR challenge, as it did in *Medline I*. A stay would simply allow the parties and the Court to take this relevant prosecution history into account.

## C.    A Stay Will Not Unduly Prejudice or Tactically Delay Medline

Bard diligently investigated and prepared its comprehensive petitions for IPR and filed each of them within one year of service of the relevant complaint. In *Black & Decker*, Judge Gottschall found that the defendants' IPR petition was prompt when filed within one year of the complaint. 2013 WL 5718460, at * 1. That case involved only ***one claim***. Here, particularly

---

[9] It is especially egregious from a public notice perspective to employ a broader construction in the district court than is used in the PTO, as Medline advocates here.

given that Medline asserted **115 claims** from **four** patents against Bard's Surestep products, one year is prompt.

Medline will not suffer undue prejudice or tactical disadvantage. "[T]he fact that an IPR will cause some degree of delay, in and of itself, is not dispositive of whether a party will suffer undue prejudice." *Ignite*, 2014 WL 2505166, at *2; *see also Black & Decker*, 2013 WL 5718460, at *2. Here, per the local rules, the case will naturally halt in any event until the Court issues a *Markman* ruling.

There is no prejudice as to damages because interest will accrue throughout the delay period. *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, 2008 WL 2940807, at *2 (N.D. Ill. July 25, 2008). Nor did Medline seek a preliminary injunction in this case, further supporting the absence of concern over any harm to Medline's position in the market. *Ignite*, 2014 WL 2505166, at *3; *see also* Smith Decl. Ex. I at 2); *Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 511 (D. Del. 2012) ("Plaintiff never sought a preliminary injunction, which suggests that any prejudice to Plaintiff that might result from delaying the ultimate resolution of this dispute is not as severe as it contends."); *Visual Interactive Phone Concepts, Inc. v. Samsung Telecomms. Am., LLC*, 2012 WL 1049197, at * 3 (E.D. Mich. Mar. 28, 2012) (failure to move for injunction "further supports a finding that a stay would not be unduly prejudicial.")

Finally, given that Medline asserts 115 claims from four patents, it is likely that even if some claims survive the IPR process, the case will be simplified and tried faster than if not. *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.,* No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004) (observing that if reexamination simplifies the proceedings the simplification could make up for the delay). Medline will not be prejudiced by having its statements to the PTO regarding the IPRs available to assist this Court in its claim construction. Medline will even

benefit from institution because Bard will be estopped from asserting prior art combinations that it could have raised in the IPRs.

## IV.     CONCLUSION

For the foregoing reasons, Bard requests that the Court stay this case pending a decision by the PTO on Bard's five IPR petitions.

Dated: November 9, 2018

By: /s/ Nicole Smith
Attorney for C. R. Bard, Inc.

Todd H. Flaming
*TF@TFLaw.US*
**Todd Flaming LLC**
20 South Clark Street, Suite 2620
Chicago, Illinois 60603
312.447.7217 (Tel)
312.236.9201 (Fax)

Vincent J. Belusko
*vbelusko@mofo.com*
Nicole Smith
*nsmith@mofo.com*
**Morrison & Foerster LLP**
707 Wilshire Boulevard
60th Floor
Los Angeles, California 90017-3543
(213) 892-5200 (Tel)
(213) 892-5454 (Fax)

Attorneys for Defendant C. R. Bard, Inc.