UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 7216 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| C.R. BARD, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Medline Industries, Inc. ("Medline") brought this lawsuit alleging that Defendant C.R. Bard, Inc. ("Bard") infringes U.S. Patent Nos. 9,745,088 ("the '088 patent"), 9,795,761 ("the '761 patent"), 9,808,400 ("the '400 patent"), and 9,808,596 ("the '596 patent") (collectively, "the patents-in-suit"). Bard thereafter petitioned the Patent Trial and Appeal Board ("PTAB") to institute *inter partes* reviews ("IPRs") on all the asserted claims in the patents-in-suit. The PTAB did so, and the Court stayed this litigation pending the completion of the IPR proceedings. By June 2020, the PTAB had issued final written decisions in all of the IPRs. Although the PTAB found that the asserted claims of the '400 patent are unpatentable, it found that Bard had not demonstrated the unpatentability of any of the asserted claims from the '088, '761, and '596 patents. With this case again proceeding, the parties began to quarrel over whether the IPR decisions that were unfavorable to Bard prevented it from challenging the validity of the surviving patent claims based on the following products: Bard's Bardex® I.C. Catheter Package Assemblies ("Bardex"), Turkel Paracentesis and Thoracentesis Safety Trays ("Turkel"), and Medline's ERASE CAUTI Tray ("ERASE CAUTI"). Based on theories of

statutory and judicial estoppel, Medline now moves to strike all of Bard's prior art invalidity grounds, which rely upon one or more of these products.

The Court grants in part and denies in part Medline's motion to strike [207]. Because Bard withdrew its invalidity ground based on ERASE CAUTI in response to Medline's motion, the Court precludes Bard from asserting that ground going forward. But the Court allows Bard to proceed with its invalidity grounds based on Bardex and Turkel because (1) statutory estoppel does not apply to these grounds, and (2) the Court does not find it appropriate in these circumstances to judicially estop Bard from pursuing these grounds.

## BACKGROUND

Medline filed this lawsuit in October 2017. Between October 4 and November 7, 2018, Bard filed five petitions asking the PTAB to institute IPR proceedings on all 115 asserted claims of the patents-in-suit. Shortly after filing the last petition, Bard moved to stay this litigation pending the PTAB's decisions on whether to grant Bard's IPR petitions. The Court denied Bard's motion without prejudice, and it invited Bard to renew its motion if the PTAB did, in fact, institute IPRs on the petitions.

In April 2019, Bard served its "Narrowing of Prior Art and Identification of Invalidity Grounds," *see* Doc. 209-8 at 2, pursuant to Local Patent Rule 3.1(b), which governs an accused infringer's identification of its final invalidity contentions. *See* N.D. Ill. LPR 3.1(b) (requiring a party to limit its final invalidity contentions to four "prior art" grounds per asserted claim and four "non-prior art" grounds). Bard identified four prior art grounds based on either 35 U.S.C. § 102 or § 103 for each of Medline's twenty asserted patent claims.[1] Each prior art ground relies upon at least one of the Bardex, Turkel, and ERASE CAUTI products as a prior art reference.

---

[1] In February 2019, Medline had narrowed the number of asserted patent claims to twenty in connection with its final infringement contentions.

By June 2019, the PTAB had instituted IPR proceedings on all five of Bard's petitions. Consequently, Bard renewed its motion to stay this litigation. Bard argued, among other things, that even Medline would benefit from a stay because Bard would be estopped from raising "prior art combinations" that it could have raised in the IPRs. Doc. 176-1 at 14.[2] In September 2019, the Court granted Bard's motion and stayed the case "until the conclusion of the PTAB's IPRs." Doc. 190 at 6.

Between April 8 and June 3, 2020, the PTAB issued final written decisions resolving Bard's IPRs. The PTAB determined that Bard had shown that the challenged claims of the '400 patent are unpatentable.[3] However, the PTAB found that Bard had not demonstrated that any of the challenged claims of the '088 patent, the '761 patent, or the '596 patent are unpatentable. Thus, the asserted claims from these three patents remain in this case.

Meanwhile, the parties were battling over the effect of the PTAB's decisions on the litigation. A few weeks after the PTAB issued its April 8 decisions, which found that Bard had not proven the unpatentability of the '088 patent's claims, Medline requested that Bard "withdraw all of [the] prior art based invalidity defenses" set forth in its Local Patent Rule 3.1(b) document. Doc. 199-4 at 2–3. Bard refused. *Id.* at 2. But after the parties met and conferred, Bard, "in an attempt to compromise," dropped three prior art grounds that relied upon the Solazzo patent, which had been the "the primary reference relied upon by Bard in the IPR proceedings." Doc. 199-5 at 2; Doc. 210 at 2. The parties thereafter filed a status report on May 18, in which the parties debated the estoppel effect of the PTAB's IPR decisions. According to Medline, estoppel applied to all of Bard's prior art invalidity grounds; Bard, on the other hand,

---

[2] For all ECF filings, the Court cites to the page number(s) set forth in a document's ECF header.

[3] Given this determination, Medline represents that it "will no longer assert the '400 patent" in this litigation. Doc. 208 at 4, 18.

3

asserted "that IPR estoppel does not apply to obviousness combinations involving prior art *products*[.]" Doc. 199 at 8–9.

At a status hearing on July 7, the Court set a schedule for the parties to brief the estoppel issue. Briefing is now complete.

## ANALYSIS

Medline seeks to estop Bard from pursuing any invalidity grounds that rely upon the Bardex, Turkel, or ERASE CAUTI products. In response to Medline's motion, Bard withdrew its invalidity ground based on ERASE CAUTI, so the Court grants Medline's motion with respect to that product. The Court, therefore, addresses only Medline's arguments with respect to the invalidity grounds that rely upon Bardex or Turkel as a prior art reference, all of which are based on 35 U.S.C. § 103.

Medline argues estoppel based on a statutory provision, 35 U.S.C. § 315(e)(2), and the doctrine of judicial estoppel. Because the scope of § 315(e)(2) is a "matter[] unique to patent law," Federal Circuit law governs whether Bard is estopped from pursuing certain invalidity arguments based on that statutory provision. *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). In contrast, whether Bard is judicially estopped is a matter of Seventh Circuit law. *Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1071 (Fed. Cir. 2009). Medline bears the burden of showing that either theory of estoppel is appropriate. *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 15 C 1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019) (statutory IPR estoppel); *Heisler v. Convergent Healthcare Recoveries, Inc.*, No. 16-CV-1344, 2019 WL 2476977, at *3 (E.D. Wis. June 12, 2019) (judicial estoppel).

I.        **Statutory IPR Estoppel**

Medline first argues that Bard is statutorily estopped from asserting any of its remaining prior art invalidity grounds. The Leahy-Smith America Invents Act ("AIA") created the IPR procedure and amended the Patent Act to include the IPR estoppel provision at issue. *See Thryv, Inc. v. Click-to-Call Techs., LP*, 590 U.S. ----, 140 S. Ct. 1367, 1370 (2020); Leahy-Smith America Invents Act, Pub. L. 112-29, 125 Stat. 284, 299–302 (Sept. 16, 2011). This provision prevents "[t]he petitioner in an inter partes review of a claim in a patent . . . that results in a final written decision" from asserting, in a civil action, "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). During an IPR, a petitioner can argue that a patent claim is invalid "only on a ground that could be raised under" 35 U.S.C. § 102 or § 103 "and only on the basis of prior art consisting of patents or printed publications." *Id.* § 311(b); *see Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1030 (E.D. Wis. 2017) (an IPR "can only be instituted on narrow grounds—anticipation and obviousness on the basis of prior art consisting of patents or printed publications"). Stated differently, a petitioner cannot use an IPR to challenge the validity of a patent claim under §§ 102 or 103 based on prior art products or systems. *Zitovault, LLC v. Int'l Bus. Machs. Corp.*, No. 3:16-cv-0962-M, 2018 WL 2971178, at *4 (N.D. Tex. Apr. 4, 2018); *Clearlamp, LLC v. LKQ Corp.*, No. 12 C 2533, 2016 WL 4734389, at *9 (N.D. Ill. Mar. 18, 2016).

According to Bard, that is the long and short of it: because its prior art invalidity grounds all rely upon prior art *products*, it could not have raised these grounds as part of the IPR proceedings, and § 315(e)(2)'s estoppel provision therefore does not apply. Doc. 210 at 2 ("Bard's remaining grounds are not subject to IPR estoppel because they each involve *physical*

5

prior art products that were on-sale and in public use prior to the claimed inventions. . . . Prior art products cannot be raised in an IPR. The estoppel inquiry should end there."). Medline, however, argues that the statutory IPR estoppel analysis requires more. It contends that the Court must look to whether the "product is described and disclosed in publications that could have been raised in the IPR"; if so, Medline continues, estoppel applies. Doc. 208 at 4; *see also* Doc. 211 at 4 (asserting that "an unsuccessful petitioner in an IPR is foreclosed from later relying on a prior art product in district court where the salient features of that product are described or shown in publications that could have been used in the IPR").

"The contours of IPR estoppel are hard to define," *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, No. 14-CV-1296-JPS, 2017 WL 4570787, at *5 (E.D. Wis. Oct. 12, 2017), "particularly in circumstances where prior art theories in litigation supposedly involve prior art that is not a patent or printed publication," *SPEX Techs. Inc v. Kingston Tech. Corp.*, No. SACV 16-01790 JVS (AGRx), 2020 WL 4342254, at *14 (C.D. Cal. June 16, 2020) (noting that district courts have "grappled with the appropriate scope of IPR estoppel" in these circumstances). Neither the Supreme Court nor the Federal Circuit has squarely addressed the issue before the Court, and district courts that have addressed this issue (or a similar one) have come to various conclusions. *See, e.g.*, *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454 & n.6 (D. Del. 2020) (noting "the division amongst District Courts that have considered" similar issues and citing cases).

In the absence of binding precedent on the issue,[4] the Court begins by first looking to the statutory language. *See Thryv*, 140 S. Ct. at 1372–73 (defining the scope of a different provision

---

[4] Although the Court may (and does) find certain district court decisions persuasive, no district court decision, even one from another court in this District, binds the Court. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a

6

under the Patent Act by first looking to the provision's text); *Kingdomware Techs., Inc. v. United States*, 579 U.S. ----, 136 S. Ct. 1969, 1976 (2016) ("In statutory construction, we begin 'with the language of the statute.'" (citation omitted)). Under § 315, IPR estoppel applies to any invalidity "*ground* that the petitioner raised or reasonably could have raised during" the IPR. 35 U.S.C. § 315(e)(2) (emphasis added). Although the Patent Act does not expressly define the term "ground," *see, e.g.*, 35 U.S.C. § 100 (defining certain terms without defining "ground"), courts have interpreted this term in the IPR estoppel context to mean the "specific pieces of prior art" that are "the basis or bases on which a petitioner challenges a claim." *Pavo Sols. LLC v. Kingston Tech. Co.*, No. 8:14-cv-01352-JLS-KES, 2020 WL 1049911, at *2 (C.D. Cal. Feb. 18, 2020) (citation omitted); *Clearlamp*, 2016 WL 4734389, at *8; *see also Solutran, Inc. v. U.S. Bancorp & Elavon, Inc.*, No. 13-cv-02637 (SRN/BRT), 2018 WL 1276999, at *4 (D. Minn. Mar. 12, 2018) (defining "ground" in another estoppel provision as "a discrete claim of invalidity based upon a prior art or a combination of prior art"). This interpretation is consistent with how the Federal Circuit has referred to "grounds" in the IPR context. *See, e.g.*, *Koninklijke Philips N.V. v. Google LLC*, 948 F.3d 1330, 1335–37 (Fed. Cir. 2020) (holding that the PTAB erroneously instituted an IPR on a ground not advanced in the IPR petition when it did so "based on a combination of prior art references not advanced in" the petition); *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1296 (Fed. Cir. 2016) (characterizing different combinations of prior art references as different grounds in an IPR petition).

The Court therefore reads "ground," as that term is used in 35 U.S.C. § 315(e)(2), to mean the specific piece of prior art or combination of prior art that a petitioner raised, or could have raised, to challenge the validity of a patent claim during an IPR. Based on this reading, the

---

different judicial district, the same judicial district, or even upon the same judge in a different case." (citation omitted)).

language of § 315(e)(2) does not estop an IPR petitioner's use in litigation of an invalidity theory that relies upon a product as a prior art reference because a prior art product cannot be used as a reference to challenge the validity of a patent claim in an IPR. Therefore, any invalidity theory relying upon that product as a prior art reference is not a "ground" that reasonably could have been raised during the IPR. *See* 35 U.S.C. § 315(e)(2). Section 315(e)(2) similarly does not preclude an invalidity theory that relies upon a document that is not a "patent" or "printed publication" as a prior art reference, even if the document is related to a product. Such a theory also is not a "ground" that could have been used to challenge a patent claim's validity during an IPR. *See Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH (KSx), 2020 WL 136591, at *23 (C.D. Cal. Jan. 13, 2020) ("Thus, § 102 and § 103 invalidity grounds that are based on non-patent/non-printed publication references . . . cannot be raised in IPR proceedings."). Moreover, an IPR petitioner generally is not prevented from pursuing an invalidity ground in litigation that relies upon at least one product or non-patent/non-printed publication as a prior art reference, even if the theory *also* relies upon patents or printed publications that could have been raised in an IPR. *See Microchip Tech. Inc. v. Aptiv Servs. US LLC*, No. 1:17-cv-01194-JDW, 2020 WL 4335519, at *4 (D. Del. July 28, 2020) ("Section [315] therefore does not estop references based on physical prior art, whether standing alone or in combination with a printed reference[, and] . . . nothing estops [the defendant] from raising invalidity arguments based on a combination of written and physical references."); *SPEX Techs.*, 2020 WL 4342254, at *15 ("[R]eliance on some printed publications in an overall collection of documents being used to describe a system invalidity theory should not lead to estoppel of the overall system invalidity theory itself, nor piecemeal exclusion of the printed publications underlying that system invalidity theory[.]").

Relying on *Oil-Dri* and *Wasica*, Medline urges the Court to more broadly interpret § 315(e)(2)'s estoppel provision as precluding an IPR petitioner from relying upon a prior art product for an invalidity theory in litigation "where the salient features of that product are described or shown in publications that could have been used in the IPR." Doc. 211 at 4. The court in *Oil-Dri* stated that "[w]here there is evidence that a petitioner has reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to the finished product (rather than the printed materials) during litigation." 2019 WL 861394, at *10. And in *Wasica*, the court found that the existence of a prior art publication that disclosed the same claim elements as a physical product precluded the defendant from pursuing obviousness theories that relied upon that product. 432 F. Supp. 3d at 452, 454–55

To be sure, a court could read *Oil-Dri* and *Wasica* as supporting Medline's or a similar interpretation of § 315(e)(2). But in the Court's view, such an interpretation stretches the meaning of the term "ground" in the IPR estoppel provision too far. *Cf. Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714-GW(AGRx), 2019 WL 8192255, at *7 (C.D. Cal. Aug. 9, 2019) ("[T]he Court declines to adopt a 'superior and separate reference' standard or any other higher standard that would require, for instance, that certain claim limitations be independently satisfied by prior art in a way that is different from an associated prior art patent or printed publication. The statute does not include such requirements, and they would likely extend the reach of statutory IPR estoppel beyond its intended scope."). If Congress had wanted to estop an IPR petitioner from pursuing invalidity grounds that relied upon a physical product in a particular situation, such as where a patent or printed publication discloses the same claim limitations as the product, it could have provided language to that effect. Congress did not do so,

9

and this failure indicates that Congress did not intend for the IPR estoppel provision to be that broad. *See Smith v. United States*, 508 U.S. 223, 229 (1993) ("Had Congress intended the narrow construction petitioner urges, it could have so indicated. It did not, and we decline to introduce that additional requirement on our own."); *see also Advocate Health Care Network v. Stapleton*, 581 U.S. ----, 137 S. Ct. 1652, 1659 (2017) (Congress' failure to adopt readily available language that would have supported a party's statutory interpretation indicated that Congress did not intend for that interpretation).

Nonetheless, an IPR petitioner avoids statutory IPR estoppel only if the invalidity ground it pursues in litigation *actually* relies upon a product or some other product-related evidence that could not have been introduced in an IPR proceeding as a prior art reference. *See Milwaukee Elec.*, 271 F. Supp. 3d at 1032 ("Snap-On cannot skirt [IPR estoppel] by purporting to rely on a device without actually relying on the device itself."). That is, the petitioner cannot put forth invalidity arguments in litigation that rely solely upon patents or printed publications that could have been raised in the IPR, and then claim that IPR estoppel does not apply because these printed materials reflect or represent a prior art product. The IPR petitioner in that situation is improperly attempting to disguise a ground that could have been raised during the IPR as one that could not have been raised. *See, e.g.*, *Vaporstream*, 2020 WL 136591, at *23 ("[S]everal district courts have held that if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to cloak its prior art ground and skirt estoppel, then § 315(e)(2) estoppel still applies." (citations omitted) (internal quotation marks omitted)); *Clearlamp*, 2016 WL 4734389, at *9 ("While LKQ seeks to cloak its reliance upon UVHC3000 as a product, so as to avoid § 315(e)(2) estoppel, such an argument is disingenuous as it is the UVHC3000 datasheet upon which LKQ relies to invalidate the asserted claims."); *see*

*also SPEX Techs.*, 2020 WL 4342254, at *15 (reliance on some printed publications to support a prior art system invalidity theory is not precluded "absent a showing that the system invalidity theory is a patent or printed publication theory in disguise").

The question now is whether Bard is estopped from pursuing any of its prior art invalidity grounds in this litigation based on the Court's interpretation of the statutory IPR estoppel provision. For each prior art invalidity ground, Bard contends that Bardex, Turkel, or both are prior art that, when combined with other prior art references, render the asserted claims of the '088, '761, and '596 patents obvious under 35 U.S.C. § 103. Medline has provided all the claim charts for Bard's prior art invalidity grounds that rely upon Turkel and the claim charts for Bard's prior art invalidity grounds that rely upon Bardex as the primary prior art reference.

Having reviewed the claim charts, and given Medline's burden to prove the propriety of estoppel, the Court concludes that Bard's prior art invalidity grounds are not estopped by 35 U.S.C. § 315(e)(2). Medline does not contend that these grounds are patent- or printed publication-based invalidity theories in disguise, and nothing in Bard's invalidity claim charts for either Bardex or Turkel suggests that this is the case. To the contrary, these charts are replete with photographs of the Bardex and Turkel products themselves, as Medline repeatedly acknowledges in its motion. *See, e.g.*, Doc. 208 at 8 ("Bard's July 2018 invalidity contentions present high-level photos of [the] products as allegedly disclosing or suggesting the claim limitations."); *id.* ("Bard uses two photos of Bardex dozens of times throughout its contentions as allegedly suggesting limitations of claims concerning the tray and syringes[.]"); *id.* at 9 ("Bard's citations to Turkel in its contentions consist largely of high-level, overhead views of the lower tray of the two-layer Turkel kit[.]"); *id.* at 15 ("[A]s with Bardex, Bard's invalidity contentions involving Turkel rely on photographs of the tray showing the structure and components[.]").

Bard's substantive reliance on photographs of the physical products themselves indicates that it intends to argue that the actual products—as opposed to documents describing the products—disclose certain limitations of the asserted claims. Indeed, Medline concedes that Bard is "relying on two *real world products*, Bardex and Turkel[,]" for its prior art invalidity grounds. Doc. 211 at 4 (emphasis added). This puts Bard's prior art invalidity grounds outside the reach of IPR estoppel under 35 U.S.C. § 315(e)(2).

## II.     Judicial Estoppel

Medline next argues that Bard made representations in its renewed motion to stay the litigation that judicially estop it from pursuing any invalidity ground based on a prior art product. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted). It "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (citation omitted). In applying judicial estoppel, courts typically consider the following three factors: "(1) whether the party's later position was 'clearly inconsistent' with its earlier position; (2) whether the party against whom estoppel is asserted in a later proceeding has succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750–51). These factors, however, are neither exhaustive nor "inflexible prerequisites." *New Hampshire*, 532 U.S. at 751. They are "general guideposts that must be considered in the context of all the relevant equities in any given case." *Grochocinski v. Mayer Brown Rowe &*

12

*Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). "To protect the integrity of the judicial process, a court needs freedom to consider the equities of an entire case." *Id.* at 796.

      Medline argues that the aforementioned factors all support applying judicial estoppel. First, Medline contends that Bard's position that the unsuccessful IPRs do not impact its prior art invalidity defenses "is clearly inconsistent with its earlier position that 'no matter the outcome,' the IPRs 'will significantly simplify the issues in this case,' because IPR estoppel 'will significantly limit Bard's invalidity arguments.'" Doc. 208 at 17 (quoting Bard's renewed motion to stay, Doc. 176-1). Second, Medline asserts that "Bard succeeded in persuading the Court based on this argument" because the Court granted Bard's renewed motion to stay, "finding that if Medline's claims survived, 'the litigation will be simplified and less burdensome because Bard will not be able to assert invalidity as a defense.'" *Id.* at 17–18 (quoting Doc. 190 at 5). Third, Medline claims that not estopping Bard will allow Bard to "derive an unfair advantage" and "impose an unfair detriment on Medline." *Id.* at 18.

      Bard, for its part, argues that judicial estoppel does not apply because it did not make any "clearly inconsistent" statements. Doc. 210 at 15–16. Bard claims that it "never stated in its motion to stay that estoppel would apply beyond the scope of Section 315" or "that it would be estopped from raising invalidity grounds based on prior art products that Bard could not have raised during the IPRs." *Id.* at 16. Rather, Bard continues, it "merely quoted the estoppel provision of Section 315 in its motion to stay[.]" *Id.*

      But Bard did much more than "merely quote[]" § 315(e)(2)'s estoppel provision—it made several statements about how it would be estopped once the IPR proceedings were over:

> Bard would be estopped from raising in expert reports, summary judgment, or at trial any prior art that it could have raised in the *inter partes* review. Therefore, no matter the outcome, the *inter*

13

> *partes* review proceedings will significantly simplify the issues in this case.
>
> * * *
>
> Medline gains at least one tactical advantage from a stay—Bard will be estopped from raising prior art in this case that it could have raised in the *inter partes* review."
>
> * * *
>
> [S]taying the case until the PTAB issues its final decision on the *inter partes* review will result in a simplification of this case regardless of the outcome. Either every asserted claim will be canceled, extinguishing any cause of action based on the claims, or Bard will be estopped from asserting invalidity based on the grounds raised but rejected during *inter partes* review.
>
> * * *
>
> If claims are canceled, there will be no need to address those claims in expert discovery, summary judgment, or pretrial filings. The same would be true of invalidity arguments for which Bard would be estopped from asserting following a final decision in the *inter partes* review.
>
> * * *
>
> Medline will benefit from the stay because, to the extent any claims survive *inter partes* review, Bard will be estopped from asserting prior art combinations that it could have raised before the PTAB. This will significantly limit Bard's invalidity arguments at summary judgment and trial.

Doc. 176-1 at 2–3, 10, 12–14. Of particular significance are Bard's assertions about the scenario where patent claims survive the IPRs, which is what happened with the claims of the '088, '761, and '596 patents. If this happened (and it did), Bard's "invalidity arguments at summary judgment and trial" would be "significantly limit[ed]." Doc. 176-1 at 14. Bard similarly stated that "no matter the outcome"—i.e., even if all the patent claims emerged from the IPRs unscathed— the IPRs would "significantly simplify the issues in this case." *Id.* at 2.

14

When Bard made these statements, though, it had already narrowed its final prior art invalidity grounds (by way of its April 2019 Local Patent Rule 3.1(b) submission) to grounds that *all* relied upon a product as a prior art reference. As Medline puts it, "Bard obtained a stay by representing to [the] Court that the IPRs would necessarily narrow the case, knowing full well that the only prior art combinations that it was then asserting included the real world Bardex and Turkel products." Doc. 211 at 5. If statutory IPR estoppel did not apply to grounds that rely upon a physical product as a prior art reference—which is precisely the position Bard now takes—Bard would not have had to narrow its prior art invalidity grounds in any way following the completion of the IPRs. In other words, based on Bard's interpretation of statutory IPR estoppel and the prior art invalidity grounds it is *actually* pursuing in this case, Bard's promise that completion of the IPR proceedings would significantly limit its invalidity arguments moving forward was illusory. Therefore, Bard's earlier position that the IPR proceedings would significantly limit its invalidity arguments is "clearly inconsistent" with its later (and current) position that the IPR proceedings do not limit the prior art invalidity arguments it can pursue.

Furthermore, Bard does not dispute that its earlier position helped persuade the Court to stay the litigation. Nor could it. In granting a stay, the Court pointed out that even if the PTAB did not cancel any claims, Bard would be "estopped from arguing that [a patent] claim is invalid" and would be unable "to assert invalidity as a defense."[5] Doc. 190 at 4–5 (citation omitted). Thus, the first two judicial estoppel factors are satisfied.

---

[5] In hindsight, the Court's statements could be read to suggest that Bard would be estopped from asserting *any* invalidity defenses. This is not the case; Bard did not contend that the IPRs would affect its invalidity defenses under 35 U.S.C. §§ 101 and 112, and statutory IPR estoppel does not preclude these defenses. *See Neptune Generics, LLC v. Eli Lilly & Co.*, 921 F.3d 1372, 1378 (Fed. Cir. 2019) ("Congress expressly limited the scope of inter partes review to a subset of grounds that can be raised under 35 U.S.C. §§ 102 & 103."); 35 U.S.C. § 315(e)(2) (estopping only invalidity grounds "that the petitioner raised or reasonably could have raised during [the] inter partes review"). As such, the scope of

That brings the Court to the final factor: whether it is unfair to allow Bard to proceed with its prior art invalidity arguments given the statements it made in renewing its motion to stay. *See Airadigm Commc'ns*, 616 F.3d at 661. Considering the equities of the entire case, *Grochocinski*, 719 F.3d at 796, the Court concludes that it is not.

First, although certain assertions by Bard in its renewed motion to stay were misleading, they were not so egregious or manipulative as to warrant wholesale preclusion of its prior art invalidity theories. *Cf. id.* (noting that "judicial estoppel is concerned more generally with protecting the integrity of the courts from the appearance and reality of manipulative litigation conduct"); *see also Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1187 (11th Cir. 2017) (en banc) ("[J]udicial estoppel should apply only when the [party's] conduct is egregious enough that the situation 'demand[s] equitable intervention.'" (citation omitted)). Second, the Court did not grant Bard's request for a stay based *solely* on its statements regarding estoppel. The Court found that other factors also weighed in favor of a stay, such as the fact that "Medline would not suffer undue prejudice or tactical disadvantage from a stay" and the fact that "if the IPRs result in cancellation of all or some of Medline's claims, those claims would no longer be at issue, and would no longer require expert discovery." Doc. 190 at 4–5. Indeed, the Court recognized that an IPR decision canceling even one patent claim "would simplify the case and would render unnecessary at least some of the expert discovery that would take place in the interim." *Id.* at 6. Here, the PTAB did more than cancel one patent claim; it found every asserted claim from the '400 patent unpatentable, thereby simplifying the case with respect to that patent. Finally, Medline has had more than a year to prepare responses to Bard's prior art invalidity theories. And to the extent the IPRs for the '088, '761, and '596 patents involved arguments similar to

---

any estoppel (statutory or judicial) would not affect Bard's ability to pursue these defenses against the remaining asserted patent claims.

Bard's litigation arguments, Medline can use—at least as a starting point—any counterarguments it developed in successfully opposing these IPRs. For instance, if Bard, "in effect, *did* raise Bardex" in the IPR petitions, as Medline contends, Doc. 208 at 14, then Medline should be able to rely upon the work it did in the IPR proceedings to defend against Bard's Bardex-related invalidity grounds in this litigation. In these circumstances, the Court does not find it unfairly detrimental to require Medline to respond on the merits to all of Bard's invalidity challenges. *Cf. Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("Cases should be decided upon their merits whenever reasonably possible."); *Holmes v. W. Side Veterans Admin. V.A. Hosp.*, No. 04 C 2287, 2007 WL 9813407, at *4 (N.D. Ill. Feb. 2, 2007) ("As a general rule, it is preferable to decide cases on the merits rather than on what are arguably technicalities.").

Ultimately, whether to apply judicial estoppel is a matter entrusted to the "equitable judgment and discretion" of the Court. *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012). Here, it is the Court's judgment that, despite Bard's inconsistent positions, Medline is not entitled to a knockout blow on Bard's prior art invalidity arguments. As such, the Court declines to judicially estop Bard from pursuing these arguments.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Medline's motion to strike [207]. The Court precludes Bard from asserting its invalidity ground based on ERASE CAUTI, but it allows Bard to proceed with its invalidity grounds based on Bardex and Turkel.

Dated: September 14, 2020

SARA L. ELLIS
United States District Judge