**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MEDLINE INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17 C 7216 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| C.R. BARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In this patent infringement lawsuit, Plaintiff Medline Industries, Inc. ("Medline") alleges that Defendant C.R. Bard, Inc. ("Bard") infringes claims of U.S. Patent Nos. 9,745,088 ("the '088 patent"), 9,795,761 ("the '761 patent"), and 9,808,596 ("the '596 patent") (collectively, "the patents-in-suit")[1] that generally relate to the configuration of trays and kits used for catheterization. After Bard served an expert report opining on the invalidity of the asserted patent claims, Medline moved to strike certain portions of the expert report as violating this District's Local Patent Rules. Two days later, Bard responded in kind, moving to strike certain portions of Medline's expert report on infringement as violating the Local Patent Rules. Both motions are now fully briefed.[2] Because Medline has shown that Bard failed to previously disclose most, but not all, of the invalidity arguments contained in the challenged portions of Bard's expert report on invalidity, the Court grants in part and denies in part Medline's motion to strike [226]. And because Bard has shown that Medline failed to previously disclose the

---

[1] Medline previously asserted another patent, U.S. Patent No. 9,808,400 ("the '400 patent"), but the '400 patent is no longer in dispute.

[2] In connection with its opposition to Bard's motion to strike, Medline filed an unopposed motion to seal certain exhibits. The Court grants that motion [232].

infringement arguments contained in the challenged portions of Medline's expert report on infringement, the Court grants Bard's motion to strike [228].

## BACKGROUND

For more than a decade, this District has had Local Patent Rules. *See* Judge Matthew F. Kennelly & Edward D. Manzo, *Northern District of Illinois Adopts Local Patent Rules*, 9 J. Marshall Rev. Intell. Prop. L. 202, 202 (Winter 2010) (Local Patent Rules first took effect on October 1, 2009). "These Local Patent Rules provide a standard structure for patent cases" and "anticipate and address many of the procedural issues that commonly arise in patent cases." N.D. Ill. LPR preamble. Among other things, the Local Patent Rules require each party, "[a]fter a reasonable period for fact discovery, . . . [to] provide a final statement of its contentions" regarding infringement and invalidity, which the "party may thereafter amend only 'upon a showing of good cause and absence of unfair prejudice, made in timely fashion following discovery of the basis for the amendment.'" *Id.* (quoting N.D. Ill. LPR 3.4); *see* N.D. Ill. LPR 3.1, 3.2.

In July 2018, the parties served their Final Infringement and Invalidity Contentions pursuant to Local Patent Rule 3.1. A few months later, this District amended that rule. *See* N.D. Ill. General Order 18-0022 (Oct. 26, 2018). The amendment requires the patentee to limit the number of patent claims it asserts in its Final Infringement Contentions and the accused patent infringer to limit the number of invalidity grounds it asserts in its Final Invalidity Contentions. *Id.*; *Medline Indus., Inc. v. C.R. Bard, Inc.* ("*Medline I*"), No. 14 C 3618, Doc. 480 at 2 (N.D. Ill. Jan. 8, 2020).[3] In February 2019, on motion from the parties, the Court ordered Medline to narrow its asserted patent claims, as required by amended Local Patent Rule 3.1(a), by February

---

[3] Another district court judge oversees the litigation between Medline and Bard in Case No. 14 C 3618.

22, 2019, and Bard to narrow its prior art and invalidity grounds, as required by amended Local Patent Rule 3.1(b), by April 8, 2019.

Fact discovery closed on May 31, 2019. The Court then stayed the litigation from September 2019 through July 2020 while the Patent Trial and Appeal Board conducted *inter partes* reviews ("IPRs") on all the asserted claims in the patents-in-suit. The claims in the patents-in-suit survived the IPRs, and the Court thereafter set a schedule for expert discovery. Per this schedule, the parties were to exchange opening expert reports by October 12, 2020 and rebuttal reports by November 23, 2020, with expert discovery closing on February 15, 2021.

Medline served an opening expert report from Dr. John Abraham, who opined that Bard's SureStep "Bag" and "Meter" single-layer Foley catheter trays or kits infringe the asserted patent claims. Bard served an opening expert report from Karl Leinsing, who opined that two primary references—U.S. Patent No. 4,160,505 ("Rauschenberger") and Bard's Bardex® I.C. Catheter Package Assemblies ("Bardex")—combined with other references render the asserted claims obvious. After each party identified issues with the other party's expert report, the parties met and conferred but were unsuccessful, leading to the current motions.

## LEGAL STANDARD

"The Court has broad discretion to manage discovery matters and enforce the Local Patent Rules." *Oil-Dri Corp. of Am. v. Nestle Purina PetCare Co.* ("*Oil-Dri II*"), No. 15 C 1067, 2018 WL 3130943, at *4 (N.D. Ill. June 26, 2018). Because this District's Local Patent Rules are "unique to patent cases" and "are likely to directly affect the substantive patent law theories that may be presented at trial, being designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction," Federal Circuit law governs the Court's interpretation of these rules. *O2 Micro*

3

*Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (citation omitted) (internal quotation marks omitted); *see Beckman Coulter, Inc. v. Sysmex Am., Inc.*, No. 18-CV-6563, 2019 WL 1875356, at *2 (N.D. Ill. Apr. 26, 2019) (this District's "Local Patent Rules are meant to prevent a shifting sands approach to claim construction by forcing the parties to crystallize their theories of the case early in litigation" (citation omitted) (internal quotation marks omitted)).

The Local Patent Rules "do not specify the actions that the [Court] may or must take if there is non-compliance with the requirements for disclosure of contentions." *O2 Micro*, 467 F.3d at 1363. "However, the rules are essentially a series of case management orders," and under Rule 16(f), the Court "may impose any 'just' sanction for the failure to obey a scheduling order," such as "prohibiting the disobedient party from supporting or opposing designated claims or defenses" or "from introducing designated matters in evidence," as set forth in Rule 37(b)(2)(A)(ii). *Id.* (citations omitted); Fed. R. Civ. P. 16(f)(1)(C) (authorizing "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii)"); Fed. R. Civ. P. 37(b)(2)(A)(ii); *see Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.* ("*Oil-Dri I*"), No. 15 C 1067, 2018 WL 1071443, at *3 (N.D. Ill. Feb. 26, 2018).

"[T]he sanction selected must be one that a reasonable jurist, apprised of all the circumstances, would have chosen as proportionate to the infraction." *Oil-Dri I*, 2018 WL 1071443, at *3 (citation omitted). The Federal Circuit has "concluded that the exclusion of evidence is often an appropriate sanction for a party's failure to comply with the patent local rules," *Phigenix, Inc. v. Genentech, Inc.*, 783 F. App'x 1014, 1020 (Fed. Cir. 2019), as have courts from this District, *see, e.g., Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2016 WL 3365430, at *3–7 (N.D. Ill. June 15, 2016) (striking portions of an expert's invalidity reports that contained

material beyond the scope of the accused infringer's Final Invalidity Contentions); *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2013 WL 2384249, at \*1–4 (N.D. Ill. May 29, 2013) (same); *Fujitsu Ltd. v. Tellabs, Inc.*, No. 09 C 4530, 2013 WL 2300782, at \*4–7 (N.D. Ill. May 24, 2013) (striking portions of an expert's infringement reports that analyzed products the patentee did not identify as being infringed in its infringement contentions).  Unlike Rule 37(c)(1), which does not allow the exclusion of evidence as a sanction for a harmless failure to disclose or supplement information under Rule 26(a) or (e), Rules 16(f)(1)(C) and 37(b)(2)(A)(ii) do not prohibit the exclusion of evidence even where the violation at issue does not cause prejudice.  *Compare* Fed. R. Civ. P. 16(f)(1)(C) *and* Fed. R. Civ. P. 37(b)(2)(A)(ii), *with* Fed. R. Civ. P. 37(c)(1); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1323 (Fed. Cir. 2016) (a district court does not "abuse its discretion by failing to consider prejudice when it applied a rule that does not require consideration of prejudice").

## ANALYSIS

The Court begins with some initial observations that inform its analysis.  Medline's expert had six weeks to draft and serve a report in response to Bard's opening expert report on invalidity; similarly, Bard's expert had six weeks to draft and serve a report in response to Medline's opening expert report on infringement.  To the extent either opening expert report disclosed a particular infringement or invalidity theory for the first time, the Court questions whether the parties' experts could have used this time to adequately respond to the new theory in their rebuttal expert reports, thereby dispelling any prejudice that may have accompanied the new disclosure.  Indeed, Bard contends that Dr. Abraham (Medline's expert) could have "easily respond[ed]" to the disclosures challenged by Medline in his rebuttal expert report, Doc. 234 at

15, 18–19,[4] although the Court notes Bard's failure to explain why its own expert, Mr. Leinsing, could not have likewise "easily respond[ed]" to the disclosures with which Bard takes issue.

Nonetheless, both Medline and Bard decided to channel their energy into seeking the Court's intervention and precluding the other party's expert from presenting the purportedly offending evidence. The rebuttal expert report deadline has now passed, and although each party may still depose the other party's expert, this does not allow the deposing party to present affirmative evidence rebutting that expert's theories—this would require giving each party the opportunity to submit a supplemental rebuttal expert report before the close of expert discovery. At this stage of the litigation and in these circumstances, the Court declines to do so, and it concludes that the proper remedy for the disclosure of a previously undisclosed theory or argument in either party's expert report is preclusion. This is especially appropriate here because the rules requiring a party to lay all its infringement or invalidity cards on the table in its Final Contentions (absent a court order based on a showing of good cause and absence of unfair prejudice) have governed patent litigation in this District for several years. *See* Kennelly & Manzo, *supra*, at 216; N.D. Ill. General Order 13-0004, at LPR 3.1, 3.2, and 3.4 (Feb. 25, 2013). The Court expects patent litigants to comply with these longstanding rules and disclose any infringement and invalidity theories their experts may rely upon before proceeding to expert discovery. *See Avnet*, 2016 WL 3365430, at *5 ("One of the purposes of final invalidity contentions is to give notice to plaintiffs of the defendant's contentions, and the bases for them, prior to expert discovery."); *see also Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) (noting, in the context of a district court's non-patent local rules, that "district courts may require strict compliance" with these rules). With these observations in mind, the Court now proceeds to address each party's motion to strike.

---

[4] For all ECF filings, the Court cites to the page number(s) set forth in a document's ECF header.

## I.     Medline's Motion to Strike

Medline moves to strike two aspects of Mr. Leinsing's opening expert report.  First, it moves to prelude his reliance upon U.S. Patent No. 3,329,261 ("Serany").  Second, it moves to strike his opinion that two combinations of references including U.S. Patent No. 5,931,303 ("Salvadori") render claim 54 of the '088 patent obvious.

Both of Medline's arguments invoke the Local Patent Rules' requirements regarding an accused infringer's Final Invalidity Contentions.  The Local Patent Rules require an accused infringer's Final Invalidity Contentions to (1) identify with particularity up to twenty-five "items of prior art per asserted patent that allegedly invalidate[] each asserted claim," (2) include, "for each item of prior art, a detailed statement of whether it allegedly anticipates or renders obvious each asserted claim," and (3) provide "a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found."  N.D. Ill. LPR 2.3(b)(1)–(3); *see* N.D. Ill. LPR 3.1(b) (requiring a party's Final Invalidity Contentions to include the information required by LPR 2.3(b)).[5]  Where the accused infringer contends that "a combination of items of prior art allegedly makes a claim obvious," it must identify "each such combination and the reasons to combine such items."  N.D. Ill. LPR 2.3(b)(2).  As of October 2018, and pursuant to the Court's February 2019 scheduling order, Bard was also required to limit its Final Invalidity Contentions, "[f]or each claim alleged to be invalid, . . . to four (4) prior art grounds per claim and four (4) non-prior art grounds," with "each combination of references" constituting a separate ground.  N.D. Ill. LPR 3.1(b).

---

[5] This requirement was already in place when Bard served its Final Invalidity Contentions in July 2018. *Compare* N.D. Ill. General Order 18-0022, at LPR 2.3 and 3.1, *with* N.D. Ill. General Order 13-0004, at LPR 2.3 and 3.1.

### A.       Serany

Medline first argues that Mr. Leinsing improperly relied upon Serany for obviousness combinations that Bard did not identify in its "Narrowing of Prior Art and Identification of Invalidity Grounds" (the "Narrowing Disclosure"), which Bard served in April 2019 pursuant to Local Patent Rule 3.1(b) and this Court's February 2019 scheduling order.  Doc. 226-8 at 2.  In this disclosure, Bard identified four prior art invalidity grounds for each asserted claim of the patents-in-suit, and for each prior art invalidity ground, Bard directed Medline to the invalidity claim charts it had provided with its Final Invalidity Contentions.  None of Bard's prior art invalidity grounds identified Serany as a reference.  In his expert report, however, Mr. Leinsing analyzes Serany, discusses how different aspects of its disclosure purportedly show the state of the art at the relevant time, and opines as to how Serany's disclosures and teachings help demonstrate that other prior art references render various claims obvious.

As already noted, Medline contends that Mr. Leinsing's reliance upon Serany is improper because Bard did not identify Serany as a reference in any of the prior art invalidity grounds it identified in its Narrowing Disclosure.  In response, Bard contends that it did not need to identify Serany as a reference in its Narrowing Disclosure because Mr. Leinsing does not rely upon Serany as part of "a prior art ground that explicitly discloses the claimed elements"; rather, he relies upon Serany to describe background information and "to show the state of the art at the time of alleged invention and motivation to combine prior art identified in the" Narrowing Disclosure.  Doc. 234 at 5 (emphasis omitted).

To prove that a claim would have been obvious, it is not enough for an accused infringer to demonstrate that two or more prior art references in combination disclose all the claim's elements.  *Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 934 (Fed. Cir. 2019)

("An invention is not obvious simply because all of the claimed limitations were known in the prior art at the time of the invention.").  The accused infringer generally must also show that there was "a reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success."  *Id.* (citation omitted); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012).  A motivation or reason to combine may be found in, among other things, prior art references or "the background knowledge, creativity, and common sense of the person of ordinary skill."  *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359–60 (Fed. Cir. 2017); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1354 (Fed. Cir. 2013).

Bard's failure to identify Serany as a reference in its Narrowing Disclosure precludes Mr. Leinsing from opining that Serany discloses elements of an asserted claim.  *See Pactiv*, 2013 WL 2384249, at *3 ("To allow an expert to go beyond [a party's Final Invalidity Contentions] would render them useless.").  But this failure does not necessarily foreclose Mr. Leinsing from discussing Serany with respect to other aspects of Bard's obviousness defense, such as a motivation to combine or a reasonable expectation of success.  An obviousness "ground" based on two or more prior art references is the "combination of references," N.D. Ill. LPR 3.1(b), which the Court interprets to be the combination of references that discloses all the elements of a particular claim.  Evidence showing why one of skill in the art would have combined those references and would have reasonably expected to succeed in doing so—even if this evidence is reflected in another prior art reference—is not itself part of the "combination[s] of references" that Local Patent Rule 3.1(b)'s limitation on prior art grounds affects.

That is not the end of the inquiry, however, because Bard's Final Invalidity Contentions still must provide a basis for the discussion and analysis of Serany that Mr. Leinsing provides in his expert report. *See Pactiv*, 2013 WL 2384249, at *3 (limiting the accused infringer's expert to the invalidity arguments contained in its Final Invalidity Contentions); *see also Trading Techs. Int'l, Inc. v. CQG, Inc.*, No. 05-cv-4811, 2014 WL 4477932, at *2 (N.D. Ill. Sept. 10, 2014) ("Expert infringement reports may not introduce theories not previously set forth in infringement contentions." (citation omitted)). On this point, the Court rejects Bard's contention that an accused infringer's Final Invalidity Contentions do not need to disclose prior art references that its expert later uses to show the "state of the art." Although some courts have followed this or similar reasoning, *see, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, at *29–30 (N.D. Cal. Feb. 20, 2015) (citing cases),[6] it is the Court's view that an accused infringer should not be permitted to "circumvent the disclosure requirements of [this District's] Local Patent Rules" by offering prior art as "background" or "state of the art" material, *see Medline I*, Doc. 480 at 5, 10 (prohibiting Bard from relying upon a prior art reference "to describe the state of the art" where Bard did not disclose the reference in its Final Invalidity Contentions); *Avnet*, 2016 WL 3365430, at *4; *Pactiv*, 2013 WL 2384249, at *2; *see also Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C 12-00852 WHA, 2012 WL 4097740, at *1–2 (N.D. Cal. Sept. 17, 2012) (striking expert's references to previously undisclosed prior art that related to "background on the art" and noting other courts' rejections of similar "attempts to elude patent local rules by defining materials as 'background' or 'context'"). The Local Patent Rules were designed to "avoid[] trial by ambush, stratagem, or evasion" and, just as importantly, were "not intended to create or tolerate clever loopholes." *Wimo Labs LLC v. Polyconcept N.A,*

---

[6] The Northern District of California has local patent rules that are similar to this District's rules. *Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, No. 16 C 9179, 2017 WL 1862646, at *3 (N.D. Ill. May 9, 2017).

*Inc.*, 358 F. Supp. 3d 761, 762–63 (N.D. Ill. 2019). Allowing an accused infringer to spring previously undisclosed prior art analyses for the first time in an expert report under the guise of a "background" or "state of the art" discussion creates a loophole that allows the accused infringer to ambush the patentee in expert discovery.[7]

Bard attempts to distinguish this District's decisions in *Pactiv* and *Avnet* on the basis that those cases did not address prior art references that "described the state of the art and provided a motivation to combine." Doc. 234 at 14–15. But describing the "state of the art" is essentially providing background, and the Court does not see how a prior art reference describing the state of the art at the time of the invention meaningfully differs from one describing the background of the claimed invention. And that the courts in *Pactiv* and *Avnet* did not specifically address prior art references that the accused infringer's expert cited to provide a motivation to combine does not diminish their underlying concern with attempts to evade the disclosure requirements of the Local Patent Rules.

If Bard intended for its expert to rely upon Serany to provide a motivation to combine or the state of the art with respect to any asserted claim, it had to disclose some semblance of that reliance in its Final Invalidity Contentions. Thus, the Court must compare Mr. Leinsing's discussion of Serany to Bard's analysis of Serany in its Final Invalidity Contentions to determine if the latter provides a sufficient foundation for the former.

First, Mr. Leinsing opines that Serany is relevant to showing that Bardex, in combination with other references, renders obvious certain claims or claim elements because Serany describes all the equipment in the catheter tray "being organized in its order of use" and explains that the

---

[7] This is equally true for Bard's attempt in its Narrowing Disclosure to reserve the right to "rely upon additional prior art references, including *but not limited to* the references identified in its final invalidity contentions, to show the state of the art[, . . .] the level of skill in the art, scope of the art, and motivation to combine." Doc. 226-8 at 2 (emphasis added).

inclusion of recesses in the tray compartment to accommodate the flanges of a syringe "makes it easy to grasp the syringe." Doc. 234-2 ¶¶ 737, 1033, 1075, 1325, 1354; Doc. 226-15 at 3, 5; Doc. 226-16 at 3–4; Doc. 226-18 at 3. Bard's final invalidity claim charts for Bardex as a primary reference, however, did not refer to Serany in any way. As such, Bard's Final Invalidity Contentions do not provide a basis for Mr. Leinsing's discussion of Serany in connection with Bardex. The Court grants Medline's motion to strike as to this aspect of the Leinsing Report and strikes the references to and discussions of Serany in paragraphs 737, 1033, 1075, 1325, and 1354 of the Leinsing Report, page 32 of Exhibit 4 to the Leinsing Report, pages 37 and 58 of Exhibit 5 to the Leinsing Report, and pages 72 and 85 of Exhibit 6 to the Leinsing Report.

Second, Mr. Leinsing opines that Serany is relevant to showing that Rauschenberger, in combination with other references, renders obvious certain claims or claim elements. Because Bard refers to Serany on several occasions in its final invalidity charts asserting Rauschenberger against the claims of the '088 and '761 patents, the Court must take a closer look at Mr. Leinsing's analysis and discussion with respect to Serany and Rauschenberger to see if they are supported by these claim charts.[8]

***Recesses for a Syringe's Flanges.*** Mr. Leinsing opines in the "state of the art" portion of his report that Serany discloses a tray that is contoured to accommodate a syringe's flanges so that an individual can easily grasp and remove the syringe from the tray. This disclosure, he continues, teaches and provides motivation to a person of ordinary skill in the art ("POSITA") to modify Rauschenberger to include one or more recesses in a tray to accommodate the flanges of a syringe and therefore render obvious claim element 19(b) of the '761 patent, which requires a compartment with "one or more recesses for accommodating flanges of one or more of the first

---

[8] Medline did not provide the Court with Bard's final invalidity chart asserting Rauschenberger against the claims of the '596 patent, so the Court cannot compare the disclosures in that claim chart to the Leinsing Report.

12

syringe or the second syringe," and claim 16 of the '596 patent, which requires a compartment with "one or more contours to accommodate a flange of at least one of the first syringe or the second syringe." Doc. 234-2 at 9–10 & ¶¶ 959, 1200; Doc. 226-9 at 76–77; Doc. 226-13 at 5; Doc. 226-14 at 4–5.

In its final invalidity claim chart for claim element 19(b) of the '761 patent, Bard asserted that it would have been obvious to modify Rauschenberger "in view of" four pieces of prior art, including Serany, such that the tray's first compartment had recesses to accommodate a syringe's flanges. Doc. 226-9 at 77–78. This assertion, however, identifies Serany as a reference to be combined with Rauschenberger to disclose an element of a claim, which Bard's Narrowing Disclosure did not disclose. Bard did not specifically identify Serany as a reference that provided the motivation to combine Rauschenberger with other references to disclose claim element 19(b). *Id.* at 80–81; *cf. id.* at 12–13, 40–41, 49–50, 53–54 (identifying specific references as providing a motivation to combine with respect to other claims). Accordingly, Bard's Final Invalidity Contentions do not disclose Mr. Leinsing's reliance upon Serany to provide a motivation to combine Rauschenberger with respect to claim 19 of the '761 patent. The Court therefore grants Medline's motion to strike that aspect of the Leinsing Report and strikes the references to and discussions about Serany in paragraph 959 of the Leinsing Report and page 25 of Exhibit 2 to the Leinsing Report.

However, Medline did not provide the Court with Bard's final invalidity chart asserting Rauschenberger against the claims of the '596 patent, so the Court does not know whether this chart provides a sufficient basis for Mr. Leinsing's reliance upon Serany to provide a motivation to combine Rauschenberger with other references to disclose claim 16 of the '596 patent. And the Court will not assume that the claim chart's disclosure is inadequate. Thus, the Court denies

Medline's motion to strike that aspect of the Leinsing Report, i.e., Mr. Leinsing's references to and discussions about Serany in paragraph 1200 of the Leinsing Report and page 31 of Exhibit 3 to the Leinsing Report. That said, the Court reiterates that Bard's failure to identify Serany as a reference in its Narrowing Disclosure means that Mr. Leinsing cannot opine that Serany itself discloses the elements of claim 16 of the '596 patent or any other asserted claim.

*Ordering Components in the Tray.* Mr. Leinsing also opines in the "state of the art" portion of his report that it was "very well-known in the art" to order the "components within a tray in accordance with their use during a catheterization procedure," as shown by Serany, which teaches a tray that provides components in their preferred order of use and items arranged in a logical step-by-step order. Doc. 234-2 at 4–5 & ¶¶ 251, 253–54. According to Mr. Leinsing, this disclosure would have taught or motivated a POSITA to arrange items within the tray in accordance with their use during a catheterization procedure, and it shows that a POSITA would have had a reasonable expectation of success in doing so. *Id.* ¶¶ 548, 551, 563, 575, 923. Mr. Leinsing relied upon Serany's "ordering" teaching to opine that Rauschenberger, in view of other references, rendered obvious claim element 1(e) of the '088 patent, which requires, in relevant part, ordering the two syringes in the tray "in accordance with their use during a catheterization procedure"; claim element 1(f), which requires the tray to have at least two compartments, with the first compartment supporting two syringes; and claim element 1(g), which requires the first compartment to have a base member defining "a mnemonic device indicating which of the first syringe or the second syringe should be used first in the catheterization procedure." *Id.* ¶¶ 548, 551, 563, 575; Doc. 226-6 at 15–16, 18; Doc. 226-17 at 3–5. He also opines that arranging items in order of use, as taught by Serany, supports his opinion that Rauschenberger and other references render obvious claim element 1(b) of the '761 patent, which recites "a first

compartment supporting a first syringe and a second syringe at different heights based upon order of use in a Foley catheterization procedure." Doc. 234-2 ¶ 923; Doc. 226-9 at 5; Doc. 226-13 at 3.

Bard's final invalidity claim charts for the '088 and '761 patents do not provide a basis for these opinions. In its invalidity chart addressing elements 1(e), 1(f), and 1(g) of the '088 patent, Bard did not mention Serany in any respect, let alone as the source of a motivation to combine references to arrange syringes in accordance with their order of use. True, elements 1(e), 1(f), and 1(g) also refer to element 1(b), which cites Serany in connection with placing two syringes in the tray, with one syringe used for lubrication and one to inflate a catheter balloon, but this citation does nothing to suggest that Bard intended to rely upon Serany to provide the motivation to combine references that disclose the ordering of syringes in accordance with their use during a catheterization procedure (claim element 1(e)), using one compartment to support two syringes (claim element 1(f)), or defining a mnemonic device indicating which of two syringes should be used first in a procedure (claim element 1(g)). As for its final invalidity chart for claim element 1(b) of the '761 patent, Bard only asserted that Serany, along with other references, demonstrated that it was well-known in the art to provide a syringe filled with lubricant in the catheter tray and to provide a tray configured to accommodate a Foley catheter with at least two syringes. Bard did not make any assertion suggesting that Serany's teaching of arranging items in the tray by order of use was relevant to the aspect of the claim element requiring syringes to be placed at different heights in the tray. *See* Doc. 226-9 at 5–8, 11–16; *cf.* Doc. 234-2 ¶¶ 923–24 (opinion of Mr. Leinsing that Serany's teaching of arranging items in the tray by order of use related to positioning the syringes at different heights in the tray based upon order of use). Accordingly, the Court grants Medline's motion to strike Mr. Leinsing's reliance

upon Serany to supply a teaching or motivation to combine with respect to claim elements 1(e), 1(f), and 1(g) of the '088 patent and claim element 1(b) of the '761 patent and strikes the references to and discussions about Serany in paragraphs 548, 551, 563, 575, and 923 of the Leinsing Report, pages 12 and 22 of Exhibit 1 to the Leinsing Report, and page 10 of Exhibit 2 to the Leinsing Report.

*"Ready for Use" System.* Finally, Mr. Leinsing opines that Serany discloses "a system that is 'ready for use' so that other parts do not have to be fetched from a storage closet" while discussing a closed-system Foley catheter, which is "a coiled medical device including a Foley catheter, a fluid receptacle, and a tube coupling the Foley catheter to the fluid receptacle." Doc. 234-2 ¶¶ 620–21, 1145, 1149–50. Mr. Leinsing discusses Serany's "ready for use" system and a closed-system Foley catheter in relation to claim 33 of the '088 patent, which claims a medical procedure kit with a "Foley catheter coupled to a fluid bag," and claim 7 of the '596 patent, which recites, in relevant part, a "coiled medical device including a Foley catheter, a fluid receptacle, and a tube coupling the Foley catheter to the fluid receptacle." *Id.*; Doc. 226-6 at 59; Doc. 226-12 at 24; Doc. 226-14 at 3; Doc. 226-17 at 6.

Bard's final invalidity contention argument for claim 33 of the '088 patent did not specifically identify Serany as a source for the motivation to combine Rauschenberger with any other reference to provide a Foley catheter coupled to a fluid bag.[9] Instead, Bard's argument merely identifies Serany as a reference to be combined with Rauschenberger—a combination that Bard did not disclose in its Narrowing Disclosure. The Court accordingly strikes Mr. Leinsing's reference to and discussion about Serany's "ready to use" system with respect to

---

[9] The Court has also considered claim 33's incorporation by reference of the argument and evidence for claim 28 and claim 28's incorporation by reference of the argument and evidence for claim 7. Bard's argument and evidence for these claims do not specifically identify Serany as a source for a motivation to combine references to disclose a Foley catheter coupled to a fluid bag.

claim 33 of the '088 patent, as found in paragraph 621 of the Leinsing Report and page 32 of Exhibit 1 to the Leinsing Report. But as already noted, Medline did not provide Bard's final invalidity claim chart for the '596 patent, so the Court cannot determine whether these contentions provide a basis for Mr. Leinsing's discussion of Serany's "ready to use" system with respect to claim 7 of the '596 patent. The Court denies Medline's motion to strike that aspect of the Leinsing Report, i.e., Mr. Leinsing's references to and discussions about Serany in paragraph 1150 of the Leinsing Report and page 14 of Exhibit 3 to the Leinsing Report.

In sum, the Court strikes Mr. Leinsing's references to and discussions about Serany in paragraphs 548, 551, 563, 575, 621, 737, 923, 959, 1033, 1075, 1325, and 1354 of the Leinsing Report; pages 12, 22, and 32 of Exhibit 1 to the Leinsing Report; pages 10 and 25 of Exhibit 2 to the Leinsing Report; page 32 of Exhibit 4 to the Leinsing Report; pages 37 and 58 of Exhibit 5 to the Leinsing Report; and pages 72 and 85 of Exhibit 6 to the Leinsing Report. The Court otherwise denies Medline's motion to strike with respect to Serany.

**B.    Salvadori**

Next, Medline takes issue with Mr. Leinsing's reliance upon Salvadori to opine that claim 54 of the '088 patent is obvious. Claim 54 recites "[t]he medical procedure kit of claim 45, further comprising one or more swabsticks disposed within the single layer tray." Doc. 226-6 at 97. In its Final Invalidity Contentions, Bard asserted that Rauschenberger rendered claim 54 obvious and that "[a]s shown by one or more of the following references, it was well known in the art at the time of the alleged invention to include one or more swabsticks disposed within the single-layer tray." *Id.* at 97–98. Bard did not, however, identify Salvadori as one of these references, nor did Bard's claim 54 argument refer to any other claim or claim element that disclosed Salvadori. Bard's final invalidity chart for the '088 patent and the other primary

17

reference upon which Mr. Leinsing relies, Bardex, also did not refer to Salvadori with respect to claim 54. Yet Mr. Leinsing opines in his expert report that Rauschenberger "in view of Bardex and Salvadori," and Bardex "in view of Salvadori," render obvious claim 54 of the '088 patent. Doc. 226-3 ¶¶ 667, 671, 854, 859; Doc. 226-17 at 7–9; Doc. 226-18 at 4–7.

Medline argues that these opinions are improper because Bard did not assert these obviousness combinations against claim 54 of the '088 patent in its Final Invalidity Contentions. The Court agrees: an expert's report may not introduce an argument that the party did not previously set forth in its Final Contentions. *Trading Techs.*, 2014 WL 4477932, at *2; *Pactiv*, 2013 WL 2384249, at *3.

Bard does not dispute that its Final Invalidity Contentions failed to assert that the Rauschenberger-Bardex-Salvadori and Bardex-Salvadori combinations rendered claim 54 of the '088 patent obvious. Bard instead argues that Mr. Leinsing's opinion on these points is permissible because both its Preliminary and Final Invalidity Contentions identified Salvadori as a reference that, in combination with other references, invalidated *other* claims of the '088 patent. That is, Bard essentially contends that Mr. Leinsing can rely upon Salvadori to opine as to the invalidity of claim 54 so long as Bard's invalidity contentions identified that reference as part of a combination that purportedly invalidates any other claim from the '088 patent, and even if that combination differs from the combination upon which Mr. Leinsing relies. But Bard's position contravenes the purpose of the Local Patent Rules' requirements regarding Final Invalidity Contentions: to ensure that the patent owner knows precisely *which* combination(s) of prior art references the accused infringer intends to assert against *which* claim(s) heading into expert discovery. *See* N.D. Ill. LPR 2.3(b)(2), (3) (requiring the accused infringer to identify obviousness combinations for "each asserted claim"); LPR 3.1(b) (requiring the accused

18

infringer to identify, at most, four prior art grounds "[f]or each claim alleged to be invalid," with "each combination of references" constituting a separate ground); *Avnet*, 2016 WL 3365430, at *5 ("One of the purposes of final invalidity contentions is to give notice to plaintiffs of the defendant's contentions, and the bases for them, prior to expert discovery."). To accept Bard's argument would strip the Final Invalidity Contentions of any meaning. *See Pactiv*, 2013 WL 2384249, at *3 ("To allow an expert to go beyond [a party's Final Invalidity Contentions] would render them useless and ignore the specificity requirements of [] Local Patent Rule 2.3.").

Bard also points out that its Narrowing Disclosure identified Salvadori as a reference to be combined with other references to render claim 54 of the '088 patent obvious. At the outset, Bard's identification of Salvadori in its Narrowing Disclosure as a reference to combine with Bardex and Rauschenberger to invalidate claim 54 was improper because, as already noted, its Final Invalidity Contention claim charts for those references did not disclose any obviousness combinations involving Salvadori for claim 54. Adding an obviousness combination that was not previously disclosed in a party's Final Invalidity Contentions is the antithesis of "narrowing" the prior art grounds at issue.[10] But even if Bard's final invalidity charts for claim 54 of the '088 patent had disclosed the Rauschenberger-Bardex-Salvadori and Bardex-Salvadori obviousness combinations upon which Mr. Leinsing relies, Bard's Narrowing Disclosure did not identify these precise combinations. Allowing Mr. Leinsing to now rely upon a combination of prior art references that Bard did not choose as one of its four "prior art grounds" would defeat the purpose of Local Patent Rule 3.1(b)'s narrowing requirement.

---

[10] Bard attempts to blame Medline for not calling out its identification of previously undisclosed obviousness combinations in its Narrowing Disclosure in April 2019, when Bard served the document. Given that Medline did not know which of the identified prior art grounds Bard's expert would opine about until October 2020, Medline did not unduly delay in raising the issue. In any event, the Court will not penalize Medline for Bard's failure to comply with the ordinary meaning of a "narrowing" disclosure.

Ultimately, Bard's contention is that Medline has been on notice that Bard intended to apply Salvadori to the '088 patent since January 2017, when it served its Preliminary Invalidity Contentions, and to claim 54 since April 2019, when it served its Narrowing Disclosure. But the question is not whether Medline knew that Bard intended to rely upon Salvadori in some manner to invalidate claim 54. The question is whether Bard's disclosures put Medline on notice that Bard intended to rely upon Salvadori in the manner Mr. Leinsing does in his expert report—as a reference to be combined with Bardex or with Rauschenberger and Bardex. Bard's Invalidity Contentions and Narrowing Disclosure did not provide this notice.

For these reasons, the Court strikes any reference to and discussion of Salvadori in paragraphs 322, 667–72, and 854–60 of the Leinsing Report, pages 42–44 of Exhibit 1 to the Leinsing Report, and pages 68–71 of Exhibit 4 to the Leinsing Report. The Court also strikes the reference to Salvadori's disclosure of swabs or swab sticks in paragraphs 250 and 384 of the Leinsing Report.

## II.     Bard's Motion to Strike

Bard, for its part, moves to strike two aspects of Dr. Abraham's infringement opinion. First, it moves to strike his opinion that Bard's "Meter" SureStep trays infringe claim 7 of the '596 patent. Second, it moves to strike his opinion that Bard's SureStep trays infringe claim 54 of the '088 patent.

### A.     "Meter" Trays and Claim 7 of the '596 Patent

Bard's first argument concerns the specificity required by the Local Patent Rules for identifying the products the patentee accuses of infringement (the "Accused Instrumentalities"). The Local Patent Rules require a patentee's Final Infringement Contentions to identify, "separately for each asserted claim, . . . each accused apparatus, product device, process, method,

act, or other instrumentality ('Accused Instrumentality') of the opposing party of which the party claiming infringement is aware." N.D. Ill. LPR 2.2(b); *see* N.D. Ill. LPR 3.1(a)(2) (requiring a party's Final Infringement Contentions to include the information required by LPR 2.2(a)–(h)).[11] The patentee must identify "[e]ach Accused Instrumentality . . . by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process." N.D. Ill. LPR 2.2(b).

As part of its Final Infringement Contentions, Medline identified the Accused Instrumentalities as "Bard's Foley catheter tray products marketed as the Bard SureStep Foley Tray System ('SureStep')." Doc. 228-3 at 3; *see also* Doc. 228-5 at 2 (identifying the Accused Instrumentality as "Bard's SureStep Foley Tray System (the 'Sure Step System')" in its infringement claim chart for the '596 patent). Medline further defined "SureStep" or the "SureStep System" as including "catheterization systems sold in different configurations, including but not limited to systems with drainage bags, urine meters, Foley catheters of different sizes and/or materials, and other variations in tray contents and/or design," and it asserted that the Accused Instrumentalities included "all such configurations of Bard's SureStep System" unless otherwise noted. Doc. 228-3 at 3; Doc. 228-5 at 2 n.1. In a footnote dropped in its claim chart for the '596 patent, Medline added that "the disclosures herein are exemplary and, unless otherwise noted, are intended to illustrate where each element of each asserted claim is found within all SureStep System products, regardless of any minor variations in tray design and/or contents." Doc. 228-5 at 2 n.1.

---

[11] This requirement was already in place when Medline served its Final Infringement Contentions in July 2018. *Compare* N.D. Ill. General Order 18-0022, at LPR 2.2 and 3.1, *with* N.D. Ill. General Order 13-0004, at LPR 2.2 and 3.1.

Relevant here are Bard's "Bag" SureStep kit and "Meter" SureStep kit.[12]  The Bag kit includes a catheter, tubing, and a fluid drainage bag; the Meter kit includes these items, as well as a urine meter.  Medline's final infringement claim chart for the '596 patent includes photographs of the Meter tray for certain claims, and it expressly refers to the Meter tray for claim 16.  But Medline's arguments concerning claim 7 do not refer to the Meter tray, and they only cite to photographs of the Bag tray.  In his expert report and accompanying claim charts, though, Dr. Abraham cites to photographs and diagrams of both the Bag and Meter trays or kits to support his infringement opinions regarding claim 7.  Moreover, in defining the SureStep products accused of infringement, Dr. Abraham explained that

> for the purposes of my analysis in this report, there are essentially two tray configurations used in the SureStep products that have been sold during the life of the patents at issue in this case.  More specifically, there are two sizes of trays.  I refer to these tray variants as the smaller and larger trays, or as the Bag and Meter trays or Bag and Meter kits[.] . . .  [T]he SureStep Bag kits and SureStep Meter kits are representative of all of the accused products in this case.

Doc. 228-6 ¶¶ 60–61.

Bard argues that the Court should strike the portions of the Abraham Report where Dr. Abraham opines that the Meter tray infringes claim 7 of the '596 patent because Medline's final infringement contentions did not disclose the Meter tray as an Accused Instrumentality with respect to claim 7.  Medline responds with several arguments—none of which are persuasive.

First, Medline points out that the definition of "SureStep System" it used with its Final Infringement Contentions encompassed all variants of the SureStep kit, including catheterization systems with "urine meters."  That is true, but Medline's expansive and non-limiting definition did not identify the Meter tray or kit with the specificity required by Local Patent Rule 2.2 with

---

[12] A kit includes, among other things, a tray.  The distinction between a kit and a tray is irrelevant to the Court's analysis, and the Court uses kit and tray interchangeably.

respect to claim 7. *See* N.D. Ill. LPR 2.2(b) (requiring the patentee to identify the Accused Instrumentality "separately for each asserted claim"); *Medline Indus., Inc. v. C.R. Bard, Inc.* ("*Medline II*"), No. 14 C 3618, Doc. 481 at 4 (N.D. Ill. Jan. 8, 2020) ("A general reference to an entire line of products, without more, falls short of [Local Patent Rule 2.2's] requirements and fails to provide an accused party with adequate notice as to the products in dispute."). When Medline served its Final Infringement Contentions, it knew about the Meter tray, as demonstrated by Medline's identification of it by name and its use of photographs of the Meter tray to support its infringement arguments for claims other than claim 7. If Medline intended to accuse the Meter tray of infringing claim 7 as well, it should have cited photographs of the Meter tray for that claim and referred to it by name, as it did for other claims. *See* N.D. Ill. LPR 2.2(b) ("Each Accused Instrumentality must be identified by name, if known[.]"); *Fujitsu*, 2013 WL 2300782, at *5 ("If Fujitsu Limited intended to rely on the inclusion of the LIAM-E, LRAME, or SPM modules in the Tellabs® 7100 system for purposes of proving infringement, it should have explicitly said so."). Medline failed to do so. And the fact that Dr. Abraham found it necessary (or at least prudent) to identify the Bag and Meter trays separately and cite to diagrams and photographs of both products to opine that Bard infringes claim 7 further shows the insufficiency of Medline's disclosure. *Cf. Medline II*, Doc. 481 at 4 ("Medline's attempt to amalgamate all four trays is belied by [its expert's] report, which provides separate claim charts for Tray C and D.").

Second, Medline contends that Bard's non-infringement arguments regarding claim 7 of the '596 patent show that Bard was on notice that the Meter tray was at issue for that claim. In its Final Non-Infringement Contentions, Bard argued that "at least the meter tray" did not infringe claim 7 because "the alleged fluid receptacle is not 'between the second compartment

base member and the Foley catheter,'" Doc. 231-2 at 2–3, which suggests that Bard at least suspected that the Meter tray might be in play for claim 7. But suspecting that Medline might contend that the Meter tray infringes claim 7 and knowing for certain that Medline was making this contention are two different things, and the rules governing Final Infringement Contentions are intended to establish the latter. *See KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *4 (N.D. Cal. Sept. 14, 2018) ("Implicit disclosures are contrary to the purpose of the local patent rules, which require parties to 'disclose the basis for their contentions' in order to 'make them *explicit* and streamline patent litigation.'" (citation omitted)).

Third, the fact that Medline's allegations for claim 10 of the '596 patent purport to illustrate infringement with a photograph of the Meter tray does not mean that Medline sufficiently alleged that the Meter tray infringes claim 7. Even though claim 10 depends on claim 7, they are still two separate claims, and the Local Patent Rules require the patentee to identify "separately for *each* asserted claim, . . . *each* accused apparatus, product device, process, method, act, or other instrumentality." N.D. Ill. LPR 2.2(b) (emphases added); *see also* N.D. Ill. LPR 2.2(c) (requiring a claim chart "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality"). To be sure, Bard may have questioned, as the Court does, why Medline identified only Bag tray photographs for claim 7 and then switched to a Meter tray photograph for claim 10, when the Meter tray must satisfy all the elements of claim 7 before it can infringe claim 10. *See Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."); *Cap Co. v. McAfee, Inc.*, No. 14-cv-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015)

("Infringement cannot be shown by a muddled hash of elements from different products[.]").

But it was not Bard's obligation to assume that this decision reflected Medline's intention to

assert that the Meter tray satisfied all the elements of claim 7, especially considering the ease

with which Medline could have included photographs of the Meter tray in its chart for these

elements. *Cf. MLC Intell. Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL

1865921, at *7 (N.D. Cal. Apr. 25, 2019) ("[T]he onus is not on Micron to 'grasp' the scope of

MLC's claim 45(d) [infringement] theory by piecing together bits of different contentions from

claims 30, 42 and 45, deciding on its own what is or is not a 'scrivener's error[.]'").

 This is not a situation where a patentee is accusing dozens of similarly functioning

products of infringement and it is burdensome and impractical for the patentee to include

evidence for each product in its claim charts. Here, there are just two products at issue: the Bag

kit and the Meter kit. There was no burden or impracticality preventing Medline from

specifically identifying the Meter kit as an Accused Instrumentality with respect to claim 7 by

including a handful of photographs showing the product and, more simply, calling it out by

name, as it had done with other claims. Its failure to do so renders Dr. Abraham's infringement

opinions regarding claim 7 and the Meter kit improper. *See Trading Techs.*, 2014 WL 4477932,

at *2 ("Expert infringement reports may not introduce theories not previously set forth in

infringement contentions." (citation omitted)); *Fujitsu*, 2013 WL 2300782, at *4–7 (striking

portions of an expert's infringement report that analyzed products the patentee did not identify as

being infringed in its infringement contentions). The Court, therefore, grants Bard's motion to

strike those portions of the Abraham Report that opine that the Meter tray or kit infringes claim 7

of the '596 patent.

B.    **Claim 54 of the '088 Patent**

Bard's second argument involves the disclosure required for a patentee's infringement contentions regarding a particular claim. A patentee's Final Infringement Contentions must include a claim chart that specifically identifies "where each element of each asserted claim is found within each Accused Instrumentality." N.D. Ill. LPR 2.2(c).

As already noted, claim 54 of the '088 patent recites "[t]he medical procedure kit of claim 45, further comprising one or more swabsticks disposed within the single layer tray." In its final infringement claim chart for the '088 patent, Medline's argument for this claim simply was to see "claims 45 and element 1(a) above," i.e., see its arguments regarding claim 45 and the first element of claim 1. Doc. 228-7 at 42. Dr. Abraham, however, provides a more detailed explanation of Bard's infringement of claim 54 in his expert report. He opines that "[t]he SureStep kits contain one or more swabsticks disposed within the single layer tray," as shown in the two following photographs of the SureStep Bag kit and the SureStep Meter Kit:




              **SureStep Bag Kit**                              **SureStep Meter Kit**

Doc. 228-6 ¶ 217. Dr. Abraham further notes that the "SureStep directions for use" also reference "swabsticks." *Id.* ¶ 218.

Bard argues that the Court should strike the portions of the Abraham Report where Dr. Abraham opines that the swab sticks[13] from Bard's Bag and Meter kits infringe claim 54 because Medline's final infringement claim chart failed to disclose this argument. Medline responds that because its infringement argument for claim 54 directs Bard to "claims 45 and element 1(a) above," Bard must consider the full range of evidence that Medline incorporated by reference from claim 45 and claim element 1(a). Claim 45 ultimately incorporates by reference argument and evidence from four different claims—claims 1, 8, 25, and 32[14]—and claim elements 1(d)(i) and 1(d)(iii) and claim 8 include the following photograph, which shows three swab sticks like the photographs upon which Dr. Abraham relied:



Doc. 228-7 at 7, 9–11, 15–17. Claim elements 1(a), 1(b), 1(d)(i), 1(d)(iii) and claim 8 also include other photographs that appear to show a tray with one swab stick.

Medline's argument is not persuasive. Initially, the Court does not see why Bard would have looked at claim 45 (and all the claims and claim elements claim 45 ultimately incorporated

---

[13] The Court's use of the term "swab sticks" is not meant to suggest that the accused products have "swabsticks" as that term is used in claim 54 and defined in the '088 patent.

[14] Claim 45 directed Bard to claims 1 and 32 and claim elements 1(b), 1(c), and 1(d). Claim 32 cross-referenced claim 25, which simply referred to claim 1, claim 8, and claim elements 1(a), 1(b), 1(c), 1(d), 1(d)(i), and 1(d)(ii). Claim 8 told Bard to see claim 1.

by reference) to locate the swab sticks recited in claim 54. Claim 54 is a dependent claim that adds only one element to the medical procedure kit claimed in claim 45: "one or more swabsticks disposed within the single layer tray." Doc. 228-6 at 7. Thus, when Medline asserted infringement based on "claims 45 and element 1(a) above," Doc. 228-7 at 42, it presumably intended for Bard to look to its claim 45 arguments and evidence to address the portion of claim 54 *referring to claim 45*, and its claim element 1(a) arguments and evidence to address the swab stick portion of the claim. Medline's claim element 1(a) arguments and evidence, in turn, do nothing to suggest that it intended to rely upon the tray's swab sticks for any aspect of its infringement argument. The language of claim element 1(a) ("a tray having a compartment for receiving a medical assembly," *see id.* at 2) does not refer to swab sticks, and although Medline included a photograph of a tray that appears to hold a swab stick for that claim element, Medline did not indicate that the swab stick was of any relevance to its infringement argument.

At any rate, even if Bard could have been expected to refer to claim 45 and then follow the various cross-references implicated by that claim, nothing in the arguments provided by Medline for claim 45 and the claims incorporated by reference provided any basis for Bard to believe that Medline was relying upon the photographs showing swab sticks to prove infringement of claim 54. None of the claims (claims 1, 8, 25, 32, or 45) recites a swab stick or similar limitation. Nor do Medline's infringement arguments for these claims mention swab sticks or identify the swab sticks as being a relevant aspect of the included photographs. Medline's argument would allow a patentee to simply fill a claim chart with photographs showing different aspects of the accused product without calling out which aspects of the photographs satisfy the claim language at issue and (if not apparent) explaining why. The Local Patent Rules demand more. *See* N.D. Ill. LPR 2.2(c) (requiring a claim chart "identifying

specifically where each element of each asserted claim is found within each Accused Instrumentality"); *Finjan, Inc. v. SonicWall, Inc.*, No. 17-cv-04467-BLF (VKD), 2019 WL 2077849, at *3–4 (N.D. Cal. May 10, 2019) (similar Local Patent Rule required the plaintiff to "identify how what is shown in the image [included in a claim chart] maps to the particular claim limitation for which the image is referenced, such as by circling or labeling in a meaningful way the elements of the image that correspond to the limitations at issue").

This is not "elevat[ing] form over substance," as Medline contends. Doc. 231 at 13. Rather, this is an example of a party using its expert to provide substance that the party omitted from its infringement contentions—here, the contention that the swab sticks shown in certain photographs satisfy the limitation of claim 54 that requires "one or more swabsticks disposed within the single layer tray."[15] Dr. Abraham cannot provide this contention for the first time in his expert report. *Trading Techs.*, 2014 WL 4477932, at *2; *Pactiv*, 2013 WL 2384249, at *3. Accordingly, the Court grants Bard's motion to strike those portions of the Abraham Report where Dr. Abraham opines that the swab sticks from Bard's Bag and Meter kits infringe claim 54 of the '088 patent.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Medline's motion to strike [226] and grants Bard's motion to strike [228]. The Court strikes (1) any reference to or discussion of Serany in paragraphs 548, 551, 563, 575, 621, 737, 923, 959, 1033, 1075, 1325, and 1354 of the Leinsing Report, pages 12, 22, and 32 of Exhibit 1 to the Leinsing Report, pages 10 and 25 of Exhibit 2 to the Leinsing Report, page 32 of Exhibit 4 to the Leinsing Report, pages 37 and 58 of Exhibit 5 to the Leinsing Report, and pages 72 and 85 of Exhibit 6 to the Leinsing

---

[15] Medline's citation to documentary and testimonial evidence that purportedly shows Bard's acknowledgement of its swab sticks and their importance only makes the Court question why Medline did not refer to any of this evidence in charting the infringement of claim 54.

Report; (2) any reference to or discussion of Salvadori in paragraphs 322, 667–72, and 854–60 of the Leinsing Report, pages 42–44 of Exhibit 1 to the Leinsing Report, and pages 68–71 of Exhibit 4 to the Leinsing Report; and (3) the reference to Salvadori's disclosure of swabs or swab sticks in paragraphs 250 and 384 of the Leinsing Report. The Court also strikes those portions of the Abraham Report (including any accompanying claim charts) where Dr. Abraham opines (1) that the Meter tray or kit infringes claim 7 of the '596 patent and (2) that the swab sticks from Bard's Bag and Meter kits infringe claim 54 of the '088 patent. Finally, the Court grants Medline's unopposed motion to seal [232].

Dated: January 5, 2021

SARA L. ELLIS
United States District Judge