UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEDLINE INDUSTRIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17 C 7216 ) ) Judge Sara L. Ellis |
| C.R. BARD, INC., | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Medline Industries, Inc. ("Medline") alleges that Defendant C.R. Bard, Inc. ("Bard") infringes claims of three U.S. patents that generally relate to the configuration of trays and kits used for catheterization.[1] In late September 2020, Bard produced a sample of a catherization kit that represents a redesign of the current Bard catherization kits that Medline accuses of infringement. When Bard's experts served rebuttal reports eight weeks later, they opined that the redesigned kit (referred to as "SureStep 1.1") constituted an acceptable non-infringing alternative to Bard's current SureStep tray design. Medline now moves to preclude Bard from relying upon SureStep 1.1 in this litigation and to strike Bard's experts' analyses of that kit under Federal Rules of Civil Procedure 26(e) and 37(c).[2] Because Bard's September 2020 disclosure of SureStep 1.1 violated Rule 26(e) and was neither substantially justified nor

---

[1] A kit includes, among other things, a tray. The distinction between a kit and a tray is irrelevant to the Court's analysis, and the Court uses the terms kit and tray interchangeably.

[2] The parties filed their briefs under seal along with redacted versions of the briefs. The parties also filed the exhibits to these briefs under seal. If the Court refers to a sealed document, it attempts to do so without revealing any information that could be reasonably deemed confidential. Nonetheless, if the Court discusses confidential information, it has done so because it is necessary to explain the path of its reasoning. *See In re Specht,* 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view, even if the litigants strongly prefer secrecy, unless a statute, rule, or privilege justifies confidentiality."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (explaining that a judge's "opinions and orders belong in the public domain").

harmless under Rule 37(c), the Court finds that sanctions are warranted in the form of an award of Medline's reasonable expenses, including attorneys' fees, caused by Bard's violation. The Court, however, declines to strike Bard's experts' analyses of SureStep 1.1 or otherwise preclude Bard from relying upon SureStep 1.1 in this litigation.

## BACKGROUND

Medline contends that Bard's SureStep single-layer Foley catheter trays and kits infringe the asserted patent claims. For this infringement, Medline contends that it is entitled to an award of lost profits damages and/or reasonable royalty damages. The existence or absence of acceptable, non-infringing alternatives to the products accused of infringement is relevant to damages calculations under both a lost profits theory and reasonable royalty theory. *See, e.g.*, *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1285–86 (Fed. Cir. 2017) (lost profits); *Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 984 (Fed. Cir. 2019) (reasonable royalty). During discovery, Medline served Interrogatory No. 5, which sought Bard's contentions regarding non-infringing alternatives:

> If You contend that acceptable, non-infringing alternatives or substitutes to the methods, systems, or apparatuses claimed in the patents-in-suit have existed, exist, or could exist, fully and specifically describe each such alternative or substitute, including by describing when it became available, the basis for Your contention that it is or could be an acceptable, non-infringing alternative or substitute (including the specific claims and limitations of the patents-in-suit that the alleged alternative or substitute would avoid infringing as a result of implementing the alternative), the costs that would be associated with developing and implementing each alternative or substitute, the steps and the time required to develop and implement each alternative or substitute, and an identification of individuals with knowledge thereof and documents relating to the foregoing.

Doc. 243-4 at 3.[3] Medline also served document requests seeking documents relating to any changes Bard made to the accused products: "[d]ocuments sufficient to show any improvements, additions, new features, new functionality, updates, revisions, and alterations to the accused products, including the reasons, justification, analysis, and basis for any such improvements, additions, new features, new functionality, updates, and alterations" (Request No. 3) and "[d]ocuments sufficient to show any changes made to each version and edition of the accused products including when each change was made or implemented, when each version or edition was sold, and identifying information for each respective version or edition" (Request No. 6). Doc. 250-3 at 3–4.

Fact discovery closed on May 31, 2019. On September 10, 2019, the Court stayed the litigation while the Patent Trial and Appeal Board conducted *inter partes* reviews ("IPRs") on all the asserted claims in the patents-in-suit. After the claims in the patents-in-suit survived the IPRs, the Court held a status hearing on July 7, 2020, at which it lifted the stay and put the case back in motion. On September 9, the Court set a schedule for expert discovery. Per this schedule, the parties were to exchange opening expert reports by October 12 and rebuttal reports by November 23. Expert discovery closed on February 25, 2021.

On September 29, less than two weeks before the opening expert report deadline, Bard's counsel produced a pre-production sample of SureStep 1.1 to Medline's counsel.[4] In producing the sample, Bard's counsel only identified the sample as "a SureStep tray product" that Bard had not yet publicly announced but intended to distribute later in 2020 to replace all existing SureStep trays. Doc. 243-3 at 4. Bard's counsel did not otherwise explain why Bard was

---

[3] For all ECF filings, the Court cites to the page number(s) set forth in a document's ECF header.

[4] Bard's counsel shipped the sample on September 28, and the offices of Medline's counsel received the sample on September 29.

3

producing the sample. On October 1, Medline's counsel confirmed receipt of the sample. He did not ask Bard's counsel why he produced the kit or "to what extent [Bard] might attempt to use this product in the case." Doc. 239-7 at 2.

On October 12, Medline served its opening expert reports, including reports on infringement and damages. Although Medline's experts addressed the non-infringing alternatives Bard had identified in response to Interrogatory No. 5, they did not address the "SureStep tray product" sample that Bard had recently produced. On November 23, Bard served rebuttal expert reports from Dr. Richard Hillstead, Mr. Raymond Sims, and Dr. Edward Yun. Bard's experts did address the sample, which they referred to as SureStep 1.1. They opined that SureStep 1.1, which has two layers, is an acceptable, non-infringing design alternative to Bard's current SureStep tray, which has one layer. Specifically, Dr. Yun examined and performed trial catheterizations using a pre-market release version of SureStep 1.1, which he understood to be substantially identical to the forthcoming market release version. He concluded that SureStep 1.1 was an improved design over the current SureStep tray; it retained the benefits of other two-layer tray designs (Bard's Advance Tray and Legacy Tray) while also incorporating benefits from Bard's current SureStep single-layer design. Dr. Hillstead also examined SureStep 1.1, and he opined that it did not infringe any of the asserted claims of the patents-in-suit. And after discussions with Dr. Yun and individuals at Bard, Dr. Hillstead further concluded that "SureStep 1.1 would be a commercially acceptable non-infringing alternative to the current SureStep tray design." Doc. 239-3 ¶ 250. Finally, Mr. Sims, who offered a rebuttal report to Medline's damages expert's report, relied upon Dr. Hillstead's and Dr. Yun's reports to identify SureStep 1.1 as a non-infringing design alternative to Bard's current catheterization trays.

4

As of December 30, 2020, Bard had not supplemented its response to Interrogatory No. 5 to identify SureStep 1.1 as a non-infringing alternative. Nor had Bard produced any relevant documentation regarding SureStep 1.1 in this litigation by that date. Rather, Bard was still "finalizing relevant documentation" and intended to produce SureStep 1.1 documents "as soon as they [were] finalized," which Bard expected to happen in January 2021. Doc. 243 at 4, 12. Bard intends to launch SureStep 1.1 in the first quarter of 2021, and after this launch, it "will no longer sell any single-layer SureStep trays upon the exhaustion of existing inventory." *Id.* at 5. According to Bard, its launch of SureStep 1.1 "will conclusively show that Medline's inflated claims regarding the purported value of a single-layer tray are meritless," and excluding evidence of SureStep 1.1 will mislead the jury as to the real-world market realities regarding Medline's damages claim. *Id.* at 2, 4, 11.

## LEGAL STANDARD

Under Rule 26(e), a party must supplement or correct its Rule 26(a)(1) initial disclosures and its responses to discovery requests "in a timely manner" if (1) it "learns that in some material respect the disclosure or response is incomplete or incorrect" and (2) "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to provide information required by Rule 26(e), Rule 37(c) generally prohibits the party from using that information "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Determining whether noncompliance with Rule 26(e) "is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011).[5]

---

[5] Although this is a patent infringement case, Seventh Circuit law governs the issues here because they involve the application of the Federal Rules of Civil Procedure, as opposed to issues that are unique to

## ANALYSIS

The Court's analysis proceeds in three steps. *See Ill. Nat'l Ins. Co. v. Ace Stamping & Mach. Co.*, No. 17 C 7567, 2020 WL 5570041, at *2 (N.D. Ill. Sept. 17, 2020); *Doe 1 v. City of Chicago*, No. 18-cv-3054, 2019 WL 5290899, at *2 (N.D. Ill. Oct. 18, 2019). First, the Court determines whether Bard's September 29, 2020 production of the SureStep 1.1 sample violated Rule 26(e); second, if Bard's production did violate Rule 26(e), the Court determines whether the violation was substantially justified or harmless; third, if Bard's violation was neither substantially justified nor harmless, the Court decides the appropriate sanction. *Ill. Nat'l Ins.*, 2020 WL 5570041, at *2; *Doe 1*, 2019 WL 5290899, at *2.

**I.     Rule 26(e)**

Bard does not dispute that it had an obligation to produce the SureStep 1.1 sample, but it contends that it did not violate Rule 26(e) because it timely produced the sample. "Rule 26(e) requires a party to *timely* supplement its initial disclosures and discovery responses when it learns of new information or information that renders an earlier response inaccurate" or incomplete. Fed. R. Civ. P. 26(e)(1)(A); *Sys. Dev. Integration, LLC v. Comput. Scis. Corp.*, No. 09-CV-4008, 2012 WL 2953063, at *2 (N.D. Ill. July 19, 2012) (emphasis in original). Whether a party timely produces information depends on when the party first learned of the information. *Simo Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 354 F. Supp. 3d 508, 510 (S.D.N.Y. 2019). As such, the producing party bears the burden of showing that the production at issue was timely. *Id.*; *Civix-DDI, LLC v. Hotels.com, L.P.*, No. 05 C 06869, 2011 WL 181342, at *3 (N.D. Ill. Jan. 19, 2011) (finding the defendants' identification of a prior art system untimely where the defendants "offer[ed] no creditable reason why they failed to

---

patent law. *See Edge Sys. LLC v. Aguila*, 708 F. App'x 998, 1002–03 (Fed. Cir. 2017) (analyzing the district court's refusal to strike untimely expert testimony regarding patent infringement under regional circuit law); *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012).

discover and disclose" the prior art system until more than nine months after fact discovery closed).

As an initial matter, that Bard produced the SureStep 1.1 sample nearly sixteen months after the close of fact discovery does not necessarily make the production untimely. *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, No. 2:12-cv-01324-JAD-NJK, 2016 WL 1611585, at *2 (D. Nev. Apr. 21, 2016) ("[Timeliness under Rule 26(e)] is better gauged in relation to the availability of the supplemental information, and not merely based on whether the information was provided after the discovery deadline." (citations omitted) (internal quotation marks omitted)). Whether a party's production of information is timely depends on when the party first learns of the information, *Simo Holdings*, 354 F. Supp. 3d at 510, and if SureStep 1.1 did not exist when fact discovery closed on May 31, 2019, as Bard claims, there was nothing for Bard to know about or produce regarding SureStep 1.1 at that time.

However, SureStep 1.1 existed in some form by July 7, 2020, when the Court lifted the stay. *See* Doc. 243 at 8 ("This case was [] stayed during the time Bard developed SureStep 1.1."). Indeed, the April 2020 and June 2020 copyright notices on the packaging of the SureStep 1.1 sample that Bard sent to Medline suggest that SureStep 1.1 was far enough along in development by at least June 2020 for Bard to start printing packaging and other materials to accompany the kit.[6] *Cf. Intermec Techs. Corp. v. Palm Inc.*, 811 F. Supp. 2d 973, 999 (D. Del. 2011) (relying, in part, on the printed copyright dates on a product's user manual to conclude that the product was prior art to a patent-in-suit). Therefore, by the Court's July 7 status hearing, Bard surely knew that SureStep 1.1 was in the pipeline, and it presumably had *some* documents

---

[6] Bard contends that the copyright dates for the printed instructions do "not indicate that the tray design was finalized or already in production in April 2020." Doc. 243 at 8–9. But the question is not when the SureStep 1.1 design "was finalized" or "in production"; the question is when Bard first had an obligation to disclose information about the SureStep 1.1 design to Medline.

7

or information about the product, whether it was ready for production or not. Yet Bard did not notify Medline or the Court at this hearing that it had a new product in the works that would affect the ongoing litigation.

Furthermore, although fact discovery had already closed, Bard had a duty to timely produce SureStep 1.1 documents and information as soon as the Court lifted the stay. *See Munive v. Town of Cicero*, No. 12 C 5481, 2016 WL 8673072, at *7 (N.D. Ill. Oct. 14, 2016) ("[A] party's obligation to supplement under Rule 26(e) does not end when discovery closes." (citation omitted)). But Bard never supplemented its response to Medline's interrogatory regarding non-infringing alternatives to identify SureStep 1.1 or explain that Bard was developing this product, even though the interrogatory asked for this type of information:

> If You contend that acceptable, non-infringing alternatives or substitutes to the methods, systems, or apparatuses claimed in the patents-in-suit have existed, exist, or could exist, fully and specifically describe each such alternative or substitute, including by describing . . . the steps and the time required to develop and implement each alternative or substitute.

Doc. 243-4 at 3. Nor did Bard produce any documentation about SureStep 1.1 (at least as of December 30, 2020) in response to Medline's Document Requests No. 3 and No. 6, which sought documents sufficient to show any improvements and changes to the accused products; when these improvements and changes took place; and the reasons and analyses underlying the changes. And Bard cannot excuse its failure to produce responsive documents on the basis that it was still "finalizing" relevant documentation regarding SureStep 1.1. Doc. 243 at 4. Medline's document requests do not request only final versions of documents, and the Court is unaware of any discovery rule or principle that allows Bard to delay producing relevant documentation for several months until it deems the documents "finalized."

8

It appears then that the first time Bard informed Medline of the existence of SureStep 1.1 was on September 29, 2020, when Medline's counsel received the pre-production sample that Bard's counsel shipped the day before. This production, made months after Bard had developed SureStep 1.1 and two weeks before Medline's opening expert reports were due, was untimely.

Although Bard represents that it made "pre-production samples of the SureStep 1.1 tray" after the Court lifted the stay, Doc. 243 at 8, Bard noticeably refrains from stating precisely *when* it first made these pre-production samples. Bard's representation would be true even if it first made a pre-production sample on July 8 (the day after the Court lifted the stay) and, in that scenario, producing the sample at the end of September would still be untimely. Instead, Bard repeatedly says that it "promptly" produced one of the pre-production samples to Medline after they were made, Doc. 243 at 3, 8, 16, but that does not tell the Court anything about when Bard made the samples in the first place. Given Bard's burden of convincing the Court that its production of the sample was timely, Bard should have identified at what point during the several weeks between the July 7 status hearing and the September 29 production it first made the pre-production samples, and then, given this date, explain why its disclosure of a sample at the end of September was timely. Bard's failure to do so is telling. *See Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 885 (N.D. Ill. 2019) ("What is legally significant is silence in the face of circumstances where one would reasonably expect either a response to a statement or some statement, itself, by the party who remains silent."). Accordingly, Bard has not shown that its September 29 production of the pre-production sample of SureStep 1.1 was timely under Rule 26(e). *See Simo Holdings*, 354 F. Supp. 3d at 510 ("[D]efendants utterly fail to explain when they learned the pertinent information. . . . Without knowing what the defendants learned and

9

when they learned it, the Court cannot conclude that their supplemental infringement contentions qualify as timely under Rule 26(e).").

Bard also contends that it "did not violate Rule 26(e) because [its] interrogatory response regarding non-infringing alternatives disclosed the non-infringing characteristics of SureStep 1.1" and this sufficiently "put Medline on notice regarding Bard's position regarding acceptable non-infringing alternatives." Doc. 243 at 9. This contention invokes the fact that Rule 26(e) requires a timely supplementation only "if the additional . . . information *has not otherwise been made known* to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). The Court, however, finds Bard's contention unavailing. Bard served the interrogatory response to which it refers on May 31, 2019. But, as Bard points out, "SureStep 1.1 did not exist at [this] time," Doc. 243 at 6, so Bard's interrogatory response could not have provided information about a product that did not yet exist. Moreover, although Bard's interrogatory response identifies as non-infringing alternatives other trays that may share certain characteristics with SureStep 1.1, this identification does not in any way suggest or otherwise "ma[k]e known" to Medline that Bard would be developing an improved, redesigned version of the SureStep tray with these characteristics that it would then make available to the public and consider a non-infringing alternative. Bard's May 31, 2019 interrogatory response does not excuse its untimely production of the SureStep 1.1 sample.

The only case Bard cites to support its contention—a non-binding district court case from the Eastern District of Texas—does not convince the Court otherwise. *See* Doc. 243 at 9 (citing *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-cv-1113-JRG-RSP, 2015 WL 11027038 (E.D. Tex. Oct. 13, 2015)). In *Promethean*, the court reaffirmed an earlier ruling that declined to strike an expert's opinion about specific non-infringing alternative products that the

10

defendants did not disclose in their interrogatory responses. 2015 WL 11027038, at *2. In doing so, the court noted that the plaintiff's interrogatories did not request an identification of specific products. *Id.* By contrast, Medline's interrogatory asked Bard to "fully and specifically describe each [non-infringing] alternative or substitute," Doc. 243-4 at 3, and Bard responded by identifying different trays by name, *id.* at 3–6 (identifying the Bard Advance Tray, the Bard Legacy Tray, the Bard SureStep tray, and Covidien's Foley catheter tray products). It also appears that the *Promethean* court reasoned that the defendants were unable to identify specific non-infringing alternatives by name before they offered an expert report, 2015 WL 11027038, at *2, which simply is not the case here, as shown by Bard's interrogatory response.

In sum, Bard has not demonstrated that its September 29 production of the SureStep 1.1 sample was timely or that Medline otherwise knew from other means during discovery about the SureStep 1.1. Therefore, Bard violated Rule 26(e).

## II.     Rule 37(c)(1)

Because Bard violated Rule 26(e), it must show that its violation is substantially justified or harmless to avoid sanctions under Rule 37(c)(1). Fed. R. Civ. P. 37(c)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851, 856–57 (7th Cir. 2003); *S.E.C. v. The Nutmeg Grp., LLC*, No. 09 C 1775, 2017 WL 4925503, at *6 (N.D. Ill. Oct. 31, 2017). Bard has not made either showing.

### A.     Substantial Justification

The substantial justification inquiry "turns in large part on the party's explanation" for the untimely disclosure of evidence, including the party's actual ability to timely disclose the evidence and "whether the party had a legal basis to argue that disclosure was not actually required." *Nutmeg Grp.*, 2017 WL 4925503, at *6; *Bull v. Bd. of Trs. of Ball State Univ.*, No. 1:10-cv-00878-JMS-TAB, 2012 WL 76137, at *2 (S.D. Ind. Jan. 10, 2012). "Substantial

justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) (citation omitted).

Bard has not provided a substantial justification for why it waited until September 29, 2020 to first disclose any evidence regarding SureStep 1.1. All indications are that Bard had relevant information and evidence regarding SureStep 1.1 at least by July 7, 2020, when the Court held a status hearing and lifted the stay in the case. Yet Bard made no mention during the status hearing that it had a new product that would be relevant to the litigation moving forward. Bard should have then timely supplemented its interrogatory response regarding non-infringing alternatives to identify SureStep 1.1 and produced relevant and responsive documentation about SureStep 1.1 once the Court lifted the stay. Bard took neither action. Moreover, because Bard has not told the Court exactly when it first made a pre-production sample of SureStep 1.1 that it could ship to Medline, Bard has not shown that its production of the sample nearly three months after the Court lifted the stay was substantially justified. *See Sys. Dev. Integration*, 2012 WL 2953063, at *2–3 (the defendant did not demonstrate that its untimely disclosure of new information was substantially justified because the defendant did "not provide any detail regarding when it learned of the new information" or provide any information as to when the newly disclosed employee-witnesses began working for the defendant). To the contrary, Bard's failure to disclose SureStep 1.1 in any form before unexpectedly producing a sample of the product just two weeks before Medline's opening expert report deadline appears to have been strategic. Thus, the Court concludes that Bard's Rule 26(e) violation was not substantially justified.

**B.     Harmlessness**

To determine whether a Rule 26(e) violation is harmless, the Court considers four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *David*, 324 F.3d at 857).

***Prejudice or Surprise.***  Initially, Bard should have brought SureStep 1.1 to Medline's (and the Court's) attention at the July 7, 2020 hearing.  But even if that failure was an oversight, Bard should have (1) timely supplemented its interrogatory response once the Court lifted the stay to identify SureStep 1.1, which would have notified Medline that Bard had a new relevant product in the pipeline that it considered to be a non-infringing alternative; and (2) timely produced SureStep 1.1 documents that are responsive to Medline's document requests.  If Bard had done any one of these things (let alone all of them), Medline could have sought to reopen fact discovery for the limited purpose of addressing SureStep 1.1 before the parties began focusing on expert discovery.  Bard's failure to do so deprived Medline of this opportunity.  Nor did Bard inform Medline why it was producing a pre-production sample of SureStep 1.1 when it did.  Bard unexpectedly produced the sample two weeks before the parties' opening expert reports were due,[7] with no suggestion that the sample was relevant to the parties' expert reports—even though Bard must have known when it produced the sample that its experts would

---

[7] Bard claims that this two-week lead time gave "Medline's experts [] plenty of time to examine the product and form opinions on it." Doc. 243 at 3. Given the apparent complexity and number of issues Medline's experts addressed in their opening reports—excluding exhibits, Medline's damages expert's report is 131 pages and its infringement expert's report is 224 pages—as well as the complications and restrictions caused by the ongoing pandemic, the Court is not prepared to say that two weeks was sufficient for Medline's experts to adequately address the SureStep 1.1 sample.

13

be addressing SureStep 1.1 in their rebuttal reports. Now, Bard's experts have addressed SureStep 1.1, while Medline's experts have not, thereby prejudicing Medline.

Although Bard's counsel should have been more forthcoming in producing the SureStep 1.1 sample, Medline's counsel also should have recognized that such a production just two weeks before the opening expert report deadline raised a red flag. Yet Medline's counsel did not ask why Bard was making the production and, more specifically, if it had anything to do with the upcoming expert report deadline; he simply "reserve[d] all rights to object to any attempt" by Bard to use the SureStep 1.1 product. Doc. 239-7 at 2. By doing so, Medline eschewed alternative options that may have alleviated the prejudice from the production. For instance, upon receiving the SureStep 1.1 sample, Medline could have asked the Court to extend the expert report deadlines so its experts had sufficient time to address the product, or it could have asked the Court to reopen discovery for the limited purpose of addressing the newly produced product. By failing to try either of these options, Medline inflicted some of the prejudice on itself. *Cf. Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 416–19 (7th Cir. 2019) (where the defendant violated Rule 26(a)(2) by first disclosing an expert declaration with its summary judgment reply, finding that the plaintiff was to blame for some of the resulting prejudice when the district court allowed the declaration because the plaintiff only sought to strike the declaration and did not request additional expert discovery or the expert's deposition).

In sum, Bard's September 29, 2020 production of the SureStep 1.1 pre-production sample and its experts' subsequent reliance on this sample and other related information in their reports prejudiced Medline, although Medline's subsequent inaction contributed somewhat to this prejudice as well. On balance, though, this factor weighs against a finding of harmlessness.

*Ability to Cure Prejudice.* There are ways to cure the prejudice to Medline other than precluding Bard and its experts from relying upon SureStep 1.1. The Court could reopen discovery for the limited purpose of allowing Medline to review documents Bard has promised to produce (and request more, if needed) about SureStep 1.1, depose witnesses regarding SureStep 1.1, and have its experts submit supplemental reports addressing SureStep 1.1. The first two allowances would not impose costs on Medline that it would not have incurred had Bard timely produced SureStep 1.1 documents and identified SureStep 1.1 witnesses once the Court lifted the stay; Medline would just incur the costs in 2021, as opposed to in 2020. The allowance for expert discovery, however, would impose extra costs. Bard has already deposed Medline's experts. If they submit supplemental reports, Bard will presumably seek to depose them again, causing Medline and its experts to spend additional time and money preparing for these depositions. There is also the inherent inefficiency in requiring experts to carve out more time to draft supplemental reports on an issue that they could have addressed during the time they previously blocked off for their initial reports. Nonetheless, this factor ultimately weighs in favor of a finding of harmlessness.

*Disruption to Trial.* Bard's Rule 26(e) violation, and any resulting discovery regarding SureStep 1.1, will not disrupt trial. There is no trial date set and, given the impact the COVID-19 pandemic has had on court proceedings in this District over the past year (and the impact it may continue to have), the Court likely will not schedule a trial in this case anytime soon, regardless of whether discovery is reopened for a limited amount of time. This factor thus supports a finding of harmlessness.

*Bad Faith or Willfulness.* The Court concludes that Bard willfully withheld information about SureStep 1.1. SureStep 1.1 existed in some form by July 2020, but Bard did not mention

the product at the Court's July 7, 2020 status hearing, and it did not identify the product in its relevant interrogatory response or produce any documentation in response to outstanding document requests once the Court lifted the stay. Bard's refusal to say exactly when it first made pre-production samples of the type it eventually shipped to Medline on September 29 also suggests that such samples existed well before then. Bard's apparently strategic decision to first disclose the existence of SureStep 1.1 just two weeks before the due date for opening expert reports weighs heavily against a finding of harmlessness. *See RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17 CV 3595, 2020 WL 4815948, at *7 (N.D. Ill. Aug. 19, 2020) (finding that the plaintiff's "knowing and purposeful" failure to disclose information earlier "weigh[ed] heavily in favor of finding the violation to be harmful").

Although two factors support a harmlessness finding and two factors weigh against such a finding, the Court concludes that the ultimate balance of the factors—when considering the strength of each factor—demonstrates that Bard's Rule 26(e) violation was not harmless. The Court is particularly troubled by Bard's decision to withhold disclosing *any* information about a new product that it says will affect the damages landscape of this litigation until two weeks before the parties' opening expert report deadline. Given Bard's apparent strategy and the resulting prejudice (even in light of Medline's own contribution to this prejudice), the Court finds that the ability to cure and disruption to trial factors carry less weight than the prejudice and willfulness factors. Indeed, as a magistrate judge in this District has observed:

> It is no answer to say the trial date has not been set. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery. If that were the determining factor, no court could preclude expert or other testimony that was unseasonably disclosed contrary to the discovery deadline dates set by the Court.

*Hard Surface Sols., Inc. v. Sherwin-Williams Co.*, 271 F.R.D. 612, 617 (N.D. Ill. 2010); *see also Trinity Homes, LLC v. Ohio Cas. Ins. Co. Grp.*, No. 1:04-cv-01920-SEB-DML, 2011 WL 2261297, at *5 (S.D. Ind. June 8, 2011) ("The absence of a current trial setting does not render the late disclosures harmless."). Similarly, that reopening discovery likely will not affect when the parties go to trial in this case (should a trial be necessary) does not negate the harm caused by Bard's tactical decision to delay disclosing the existence of SureStep 1.1.

Because the Court concludes that Bard's Rule 26(e) violation was neither substantially justified nor harmless, it must now determine the appropriate sanction.

### III. Appropriate Sanction

Although many cases say that an unjustified and harmful failure to disclose evidence results in the automatic and mandatory exclusion of the evidence, *see, e.g.*, *Tribble*, 670 F.3d at 760; *David*, 324 F.3d at 857, the actual text of Rule 37(c)(1) allows the Court to consider other appropriate sanctions "[i]n addition to or *instead* of" exclusion, such as ordering the payment of reasonable expenses caused by the violation. Fed. R. Civ. P. 37(c)(1) (emphasis added); *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 615–16 (7th Cir. 2002) (noting that Rule 37(c)(1) authorizes the imposition of sanctions other than exclusion); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998) (explaining that Rule 37(c)(1) "presents alternatives less severe than exclusion of [improperly disclosed] expert testimony"). Thus, although exclusion is one sanction on the table, the Court considers other more lenient sanctions as well. *See Doe 1*, 2019 WL 5290899, at *9; *Schmelzer v. Muncy*, No. 3:16-CV-00290-GCS, 2019 WL 3842335, at *6 (S.D. Ill. Aug. 14, 2019).

Here, the Court determines that exclusion is not appropriate. The Court has not yet set any *Daubert* or summary judgment motion deadlines and, as already discussed, a trial date is not

17

on the horizon. In these circumstances, precluding Bard and its experts from addressing SureStep 1.1 is too harsh a sanction because the Court can reopen discovery for the limited purpose of allowing Medline to address SureStep 1.1 without affecting any already-set deadlines. *See Doe 1*, 2019 WL 5290899, at *9 (exclusion of untimely produced evidence was too severe where no trial date was set, summary judgment briefing had not yet commenced, and the court could reopen discovery to cure "the prejudice caused by each party's discovery failures"); *Schmelzer*, 2019 WL 3842335, at *6 (exclusion of evidence was not appropriate where the trial date was six months away and there was "sufficient time for a limited re-opening of discovery"). At the same time, reopening discovery will force Medline to incur extra costs that it would not have otherwise incurred if Bard had complied with its obligations under Rule 26(e) in the first instance. As such, the Court concludes that the proper sanction is to order Bard to pay Medline's "reasonable expenses, including attorney's fees," caused by its unjustified and harmful late disclosure of SureStep 1.1. Fed. R. Civ. P. 37(c)(1)(A); *Doe 1*, 2019 WL 5290899, at *10 (ordering the parties to pay fees and expenses caused by their discovery failures).

The Court, therefore, orders the parties to meet and confer regarding a proposed schedule for reopening fact and expert discovery for the limited purpose of allowing Medline to address SureStep 1.1. The parties must file their agreed-upon proposed schedule (or, if they cannot agree on a schedule, their competing proposed schedules) with the Court within twenty-one days of this opinion. The Court further orders Bard to pay: (1) the reasonable attorneys' fees incurred by Medline in briefing the current motion; (2) the reasonable attorneys' fees and expenses (including expert fees) incurred by Medline in connection with any supplemental reports that its experts provide to address SureStep 1.1; and (3) the reasonable attorneys' fees and expenses (including expert fees) incurred by Medline in connection with any deposition that Bard takes of

18

Medline's experts in connection with their supplemental expert reports. The parties must meet and confer regarding the first category of sanctions within seven days of this opinion to see if they can agree to the amount of attorneys' fees for Bard to pay. If they cannot, Medline must submit a fee petition within fourteen days of this opinion, and Bard has seven days after that to respond to the fee petition. With respect to the second and third categories of sanctions, the parties must meet and confer regarding the amount of fees and expenses to be paid within a reasonable amount of time after they are incurred. If the parties do not agree on the amount of fees and expenses to be paid, they must promptly bring the dispute to the Court's attention for resolution.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Medline's motion to strike [239, 240]. The parties must file their agreed-upon proposed schedule for reopening fact and expert discovery for the limited purpose of allowing Medline to address SureStep 1.1 (or, if they cannot agree, their competing proposed schedules) with the Court within twenty-one days of this opinion. The Court further orders Bard to pay: (1) the reasonable attorneys' fees incurred by Medline in briefing the current motion; (2) the reasonable attorneys' fees and expenses (including expert fees) incurred by Medline in connection with any supplemental reports that its experts provide to address SureStep 1.1; and (3) the reasonable attorneys' fees and expenses (including expert fees) incurred by Medline in connection with any deposition that Bard takes of Medline's experts in connection with their supplemental expert reports.

Dated: March 2, 2021

_____
SARA L. ELLIS
United States District Judge